### CAIN BROTHERS COMPANY v. B. F. WALLACE.

1. AGENT — *Scope of Authority — Evidence.* When a corporation carries on the business of buying and shipping grain through an agent, and the authority of such agent to purchase grain in wagon-load lots upon inspection is conceded, it is competent to introduce evidence to show the inspection and purchase of grain by such agent, to determine the scope and authority of his agency, and to ascertain whether the purchase of certain grain sued for was within the fair scope of his authority as the agent of such corporation.

2. ———— *Special Findings.* The special findings examined, and found to be supported by evidence, and not inconsistent with the general verdict.

3. —— *Instructions.* Instructions given to a jury should be taken and considered together as an entirety.

4. —— *Impeachment of Verdict.* Statements of a juryman of what took place during the trial of an action, made after the rendition of the verdict and the separation of the jury, and not under oath, are simply hearsay evidence, and it is not error for the trial court to overrule a motion for a new trial, based upon affidavits of such hearsay statements.

### *Error from Atchison District Court.*

THE opinion states the case. Judgment for plaintiff, *Wallace*, at the January term, 1888. The defendant *Company* brings the case to this court.

*W. W. & W. F. Guthrie,* for plaintiff in error.

*H. M. Jackson,* for defendant in error.

Opinion by GREEN, C.: This action was commenced in the district court of Atchison county by B. F. Wallace, against Cain Brothers Company, to recover the sum of $978.65 as a balance claimed to be due him for wheat sold to the defendant. The petition alleged —

"That on or about the 20th day of October, 1886, the defendant, Cain Brothers Company, was and still is a corporation, duly incorporated and organized under the laws of the state of Kansas, and as such was doing business in divers counties of said state of Kansas as a buyer, seller and shipper of grain; and that on or about October 20, 1886, and for a long time prior and also subsequent thereto, one R. B. Buck was the duly-authorized and acting agent of said defendant company in the matter of making contracts for and in buying and shipping of grain in behalf of said company in the county of Jewell, and in the state of Kansas; and that on or about the 20th day of October, 1886, said defendant, by and through its duly-authorized and acting agent, R. B. Buck, upon examination, inspection and test of the certain grain then belonging to and the property of this plaintiff, contracted with this plaintiff for the purchase of a large quantity of wheat then in the possession of the plaintiff, to be delivered on board of cars at Jewell City, Kansas, near the place of business of said defendant company at said Jewell City, and thereafter and under

and by the terms of said contract, and between the 20th day of October, 1886, and the 6th day of November, 1886, this plaintiff delivered to said defendant, on board the cars at said Jewell City, 5,310 bus. and 55 lbs. of wheat, which the said defendant, by and through its said acting and duly-authorized agent, contracted, promised and agreed to pay to this plaintiff the price and sum of 50 cents per bushel, or $2,655.45; that of said sum said defendant paid to this plaintiff the sum of $1,676.80, and the balance due to plaintiff thereon is $978.65."

To this petition, the defendant answered by a general denial, and, as a second defense, alleged "that although said R. B. Buck was in the employ of the defendant at the said time, he was not then or at any other time the duly-authorized and acting agent of the defendant in the matter of making contracts for, and in buying and shipping, grain on behalf of defendant," and then denied specifically the contract for the sale of wheat by plaintiff, and alleged what was claimed by defendant as being the contract in relation thereto, alleging, in brief, that the contract was to ship the grain to Atchison, to be delivered and graded at Atchison, and then alleged that said wheat was not of the grade represented. and contracted for, and that for that reason the said grain was shipped to St. Louis and other markets and sold, and the proceeds — accounted as $788.65 — paid to plaintiff in full settlement thereof; and for a further defense set up a counterclaim for $250 damages, by reason of the failure of the plaintiff to perform his contract. The jury returned a verdict in favor of plaintiff for the sum of $728. A motion for a new trial was overruled. Judgment was rendered for the amount of the verdict and costs, and the defendant brings the case to this court.

I. The first assignment of error is the introduction of evidence, upon the part of the plaintiff, to show the authority of R. B. Buck to make the contract alleged in plaintiff's petition. It was conceded that the defendant opened its business in Jewell City about the 1st of September, 1886, for the purpose of buying grain, and that Buck was in charge of such business and authorized to purchase grain under certain re-

strictions.   The evidence complained of tended to prove
Buck's authority to make the contract claimed by plaintiff, by
showing that he inspected, received and paid for different lots
of wheat as brought to defendant's warehouse.   We think
the evidence was competent.   The authority of the agent was
not in writing, so as to make the scope of such authority a
question of law for the court.   Buck was the recognized agent
of the defendant, so that the question was not whether the
relation of principal and agent existed, but what was the
scope of the agency?   The fact and scope of an agency may
be determined not alone by what the principal may tell the
agent to do, but also from what he knows, or in the exercise
of ordinary care might know, as to what the agent is doing.
It has been said:

"In most cases, if not in all, the question of agency is a
matter of fact, which it is the province of a jury to determine
upon under the instructions of the court; and if the testi-
mony tends to prove that the person acting as agent had au-
thority from his principal to do the act, then it is manifest
that the court cannot exclude from the jury the act itself
without overstepping the law of its duty, and assuming to
determine a matter which belongs to the jury, to wit, the
authority of the agent to do the act.   The correct rule is this:
If there is no proof whatever tending to prove the agency,
the act may be excluded from the jury by the court; but if
there is any evidence tending to prove the authority of the
agent, then the act cannot be excluded from them, for they
are the judges of the sufficiency and weight of the evidence."
(*McClung's Ex'rs v. Spotswood,* 19 Ala. 165; *Brett v. Bassett,*
63 Iowa, 340; Thomp., Trials, § 1370; *Jacobson v. Poindex-
ter,* 43 Ark. 97; *Kingsley v. Fitts,* 51 Vt. 414.)

II.  The plaintiff in error claims that the special findings
of the jury are against the weight of the evidence, and there-
fore must be set aside and a new trial ordered.   It is insisted,
in support of this claim, that plaintiff had delivered all of
his wheat raised in 1886 from the thresher, excepting about
200 bushels, prior to October 20, 1886, and amounted to
1,524 bushels, together with a crop of oats raised in the same
year, amounting to $683.25 for wheat, and $178.25 for oats,

making a total of $861.50; and from this state of facts it is argued that the plaintiff's crop of wheat raised in 1886 could not have been in the consignment shipped between October 25 and November 12, and that a certain item of $441.63 could not have been for the 1886 wheat, but for the crop of 1885; and also that the sum of $1,347.03 was paid on account of the wheat crop of 1885, and that, therefore, there could not be a balance, as the jury found, of $670.09 on account of the 1885 crop. According to the evidence of the plaintiff, he delivered about 5,700 bushels of wheat to the defendant, and had received payments at different times aggregating $2,650.15, and that the grain sold amounted to $2,645.45, so that, according to his own evidence in the first instance, he had been paid for his grain. The production of a check for $361.50, and a draft for $500, with the plaintiff's indorsements, seemed to confirm the defendant in its position. This matter, however, was explained to the apparent satisfaction of the jury. It was shown that the plaintiff had sold a lot of wheat and oats which he had received from some of his neighbors, and it had been delivered to the defendant and paid for by a draft for $500 and a check given by Buck upon a local bank in Jewell City for $361.50, and had no connection with grain sued for; and having been settled for, had doubtless passed out of the mind of the plaintiff until the transaction was recalled by the production of the draft and check.

The plaintiff in error calls attention to the inconsistency between the answers to questions numbered 4 and 6 and the answer to number 7 of plaintiff's series of questions. We think the answers can be very easily reconciled by the fact that they referred to two different sales; 4 and 6 had reference to the wheat which had been sold and settled for, and 7 related to the last wheat delivered. Keeping in mind the two transactions, which were separate and distinct sales, we think there is some evidence to support the series of special findings submitted by the plaintiff, and that they are not inconsistent.

The findings in the defendant's series of questions and answers plaintiff in error claims are equally wrong, and says that

No. 3 finds this wheat not inferior to No. 2, and calls our attention to the evidence in regard to the official inspection at Atchison. The finding was as follows: "Was the wheat sued for in this action greatly inferior in quality to that contracted by the plaintiff to be delivered to defendant? Ans. No." This finding is not subject to the objection made by the plaintiff in error.

Objection is made to the fourth finding, that Atchison inspection was not intended, and the argument is urged that Buck had received 1,524 bushels of wheat upon his own inspection, and counsel ask, "Why was the grain inspected in Atchison, if it was not to be delivered there?" The claim of the plaintiff was, that the inspection and delivery were at Jewell City, and the defendant insisted that the contract called for Atchison delivery and inspection. The jury found with the plaintiff, and there was evidence to support the finding.

We have carefully examined the evidence bearing upon the other special findings complained of, and, without mentioning each specially, we think they are not subject to the strictures placed upon them by counsel, and are not unsupported by evidence.

The next complaint of counsel is, the jury's refusal to answer this special question: "Did the defendant in good faith cause the wheat, the subject of this action, to be inspected, and thereafter make disposition of the same?" Answer: "Unable to say." No objection was made to the answer when the jury returned with the general verdict, and the error cannot now be considered. (*Arthur v. Wallace*, 8 Kas. 267; *K. P. Rly. Co. v. Pointer*, 14 id. 52.)

III. Our attention is next called to the general charge of the court, and complaint is made that it is misleading, particularly instructions numbered 6 and 7. In these instructions the court said to the jury that, if they found that the agent had such authority, and made the contract as alleged by plaintiff and stated in the first of the instructions, then the plaintiff would be entitled to recover the difference between the aggregate amount of wheat so delivered under the contract and the

amount paid thereon, not exceeding $672.06, with 7 per cent. interest from the time of the delivery at Jewell City; that if they should find that the contract was made between the plaintiff and the defendant, as stated in the first and sixth instructions, it would not be necessary for them to consider the counterclaim of the defendant. The delivery of the wheat was admitted, and there was no controversy over the amount. We see no error in these instructions, taken in connection with the rest of the charge.

"Instructions should be read and construed in connection with one another and as a whole, and where detatched sentences, which standing alone might seem inaccurate, are so qualified by other portions of the charge as to fully state the law of the case, and not calculated to mislead, they afford no ground for reversal." (*C. B. U. P. Rld. Co. v. Andrews*, 41 Kas. 383.)

IV. The last assignment of error urged is, the misconduct of the jury. This claim is supported by the affidavits of two of the members of the corporation as to what one of the jurors told them after the trial had been concluded and the jury discharged. Statements made by a juror after the trial, and not under oath, are not competent evidence. They would simply be hearsay, and, when the testimony of the juryman himself is not offered, should not be considered.

(*Sharpe v. Williams*, 41 Kas. 56; *Gottlieb v. Jasper*, 27 id. 770.)

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.