Pasche v. Town Co.

.CHARLES PASCHE et al., Appellants, v. SOUTH ST. JOSEPH TOWN COMPANY, et al., Respondents.

Kansas City Court of Appeals, November 3, 1913.

1. TAX BILLS: Street Improvements: Petition for: Authority to Bind Corporate Owner. The law authorizing street improvements to be made upon the presentation of a petition signed by the owners of a majority of the front feet abutting on the street to be improved does not require the names of the owners to be signed in any particular way, nor that the authority to sign shall appear on the face of the petition, or be shown by any particular kind of evidence. An officer of a corporation must be authorized to sign the petition in order to bind the corporation. He has no authority, by virtue of his office, to bind the corporate owner. The authority to bind, however, does not have to be shown by a formal resolution passed by the board of directors. Authority to sign may be shown by evidence that the Board of Directors had placed all business in the hands of the officer, that he had signed similar petitions for street improvements and the directors knew of it and made no objection thereto. In fact, the authority to sign may be shown by any evidence that would be sufficient to show authority in the agent to do any other act which he could not do merely by virtue of his office.

2. ————: ————: Evidence: Burden of Proof: Whether Signed by Owners of Requisite Number of Front Feet. Where the petition for the improvement states that it is signed by the owners of the requisite number of front feet, and the municipal authorities have so found and have acted on the petition on its merits, such record is not conclusive on this point, but it is prima facie evidence of such fact, and throws the burden of proving that the petition was not so signed upon the party who asserts that fact.

3. ————: ————: ————: ————. In this case the evidence offered to show that the officer signing the corporate name to the petition did in fact have such authority as would and did bind the corporation, is reviewed and held sufficient to bind it.

Appeal from Buchanan Circuit Court.—Hon. Wm. D. Rusk, Judge.

REVERSED AND REMANDED (with directions).

*Culver & Phillips* for appellants.

*Broaddus & Crow* for respondents.

TRIMBLE, J.—This is a suit upon two special tax bills issued against two lots respectively in the South St. Joseph Town Company's Third Addition to South St. Joseph, for the cost of paving, curbing, and guttering Lake avenue, from Illinois avenue to Alabama street. The judgment below was for defendants and plaintiffs appealed. The two lots are owned by the defendant Ruth E. Brady; and the defendants, the South St. Joseph Town Company and A. L. Thompson have some interest in them.

It is conceded that plaintiffs are entitled to recover upon both tax bills unless the one defense interposed by the defendants shall prevail. That defense is that the petition presented to the board of public works, praying for the improvement and selecting the materials therefor, was not signed by the resident owners of a majority of the front feet of the property abutting upon the improvement. The strength or weakness of that contention depends upon the sole proposition whether the signature of the South St. Joseph Town Company by E. M. Lindsay, its secretary and treasurer, was a signing by said company of said petition. If the signature of said company as owner of 1023.25 feet should be stricken off and that number of feet not be counted, because the signature was not authorized in such way as to bind the company, then said petition was not signed by the owners of a majority of the front feet of the property abutting on the improvement, and the tax bills are, in that event, void because, in such case, the city had no jurisdiction or power to authorize the improvement or levy the special tax bills.

The trial court made, among others, the following finding of fact (which is the only one now material to the consideration of this appeal), to-wit:

"The court further finds that the South St. Joseph Town Company has been incorporated for about twelve years, and shortly after its incorporation and before Mr. Lindsay signed the petition asking that the improvement be made, the board of directors at a meeting or meetings of the directors instructed and directed John Donovan, president, and Ernest Lindsay, secretary and treasurer of the South St. Joseph Town Company, to attend to all business of that company, the practical management of all of the company's business being placed in Mr. Lindsay's hands. The directors were nonresidents of the State of Missouri, excepting Mr. Lindsay and Mr. Donovan and Mr. Van Vliet, and for that reason they left the transaction of all business of the company to Mr. Donovan, president, and Mr. Lindsay, secretary and treasurer. After the property of the South St. Joseph Town Company was taken in the corporate limits of South St. Joseph, and before the petition referred to was signed, there came up before the board of directors a great many matters of business in which the company was interested; sewers, water mains, gas mains, street improvements, sidewalks, grading, water connections and many other things, and all of these matters were brought to the attention of the directors of the company by Mr. Donovan, and the instructions of the board of directors were that Mr. Donovan as president and Mr. Lindsay as secretary and treasurer should handle and attend to all of these things for the company, and thereafter they did attend to all of these matters. Mr. Lindsay as secretary and treasurer, usually, and Mr. Donovan, sometimes, signed the petitions asking for the improvements of all the streets abutting upon the property of the company which were improved, and the board of directors knew that Mr. Lindsay was actually transacting all the business of the company, including the business of causing the streets in the addition owned by the comapny to be

improved. Each year the board of directors ratified everything Lindsay and Donovan had done during the preceding year. They handled all of the business of the company of every kind and description with the knowledge of the board of directors. The board of directors met once a year and elected officers. That is about all the business that the board of directors themselves transacted, the entire management and control of the property being left with Mr. Donovan and Mr. Lindsay. When the petition for the improvement of Lake avenue came up, Mr. Donovan and Mr. Lindsay agreed that Mr. Lindsay should sign the petition for the company, and Mr. Donovan directed Mr. Lindsay to sign, and he did sign it for the company.''

Thereupon the trial court held that as the board of directors of the South St. Joseph Town Company had not passed any resolution especially relating to Mr. Lindsay's authority to sign petitions for street improvements, or specially authorizing him to sign this particular petition, the name of said company as owner of 1023.25 feet should not be counted, and thus the number of feet represented by the owners on the petition fell below the number required to make a majority.

The question thus presented is: Did the secretary, when he signed the town company's name to the petition, have sufficient authority to bind the company? This involves also the question when a managing officer of a corporation signs the corporation's name to a petition for a street improvement, how must his authority to do so be shown in order to bind the company? The statute authorizing the petition does not require the names of the owners to be signed in any particular way, nor that the authority to sign shall appear on the face of the petition, nor does it provide that the authority to sign shall be proved or established by any particular kind of evidence. If, therefore, the secretary has such authority to sign the pe-

tition as would bind the corporation if it were in any
other matter of ordinary contract, then the company
should be bound in the improvement proceeding. And,
if the corporation itself is bound, certainly Ruth E.
Brady, the owner of the particular lots in question,
cannot complain especially since she as owner of said
two lots also signed the petition for the improvement;
and in said petition it is alleged that the owners con-
stitute a majority of the front feet.

The board of public works found that the petition
was signed by the owners of the necessary majority
of the front feet. Of course, its finding is not conclu-
sive, but may be inquired into. However, as the stat-
ute does not require the corporation's name to be
signed by any particular officer, nor that such officer's
authority to sign should appear on the face of, or be
attached to, the petition, the finding of the board that
the owners of a majority of the front feet had signed
it, establishes, prima facie, that the town company's
name had been signed so as to bind the company, and
throws upon the defendants the burden of proving
that the company was not so bound. In Hudson Co. v.
City of Bayonne, 54 N. J. Law, 293, 1. c. 296, the pro-
ceeding was attacked upon the ground that a signa-
ture on the petition was not authorized, or was not the
signature which it purported to be, and the court said:
"The circumstance that the body to whom it was pre-
sented has acted upon it as genuine, is prima facie
evidence that it is what it purports to be." In that
case the signature disputed was "Elizabeth Wilkin-
son, per J. W. Heck, Attorney" and while the court
held that such signature should not be counted, such
holding was on the ground that "no authority what-
ever" was in Heck to sign, as the evidence showed
that he had never said anything at all to her about
the matter. In State ex rel. v. Nelson, 57 Wis. 147,
it was held that as the petition stated that it con-
tained the requisite number of qualified signers and

the board acted upon the petition and disposed of it on the merits, this was sufficient to cast the burden of showing that it was not so signed upon the party who asserts it.

The defendants in this case contend that they maintained that burden of proof by showing that there was no resolution adopted or passed by the board of directors of the town company specifically authorizing Lindsay, the secretary and treasurer, to sign petitions for street improvements, or to sign this particular petition, and by showing that at the time Lindsay signed the petition the board of directors did not know that the particular street in question, Lake avenue, was being sought to be improved. And the trial court held with defendants on that contention. But does the authority to sign for and thereby bind the company have to be shown in any such way? In the absence of any particular requirement by the statute, cannot the authority of this officer, Lindsay, be shown in any way that would bind the corporation as in the case of any other act done by an agent? In Sherman v. Fitch, 98 Mass. 59, 1. c. 64, it is said: "Authority in the agent of a corporation may be inferred from the conduct of its officers, or from their knowledge and neglect to make objection, as well as in the case of individuals." In the case of Allen v. City of Portland, 58 Pac. 509, it was sought to have a special assessment for a street improvement declared void. The ground of the attack was that the petition for the improvement did not contain the names of the owners of one half of the abutting property. To maintain this charge it was necessary that the name of the Oregonian Publishing Company should be declared not properly signed thereto. The signature in question was thus: "Oregonian Publishing Co. by H. L. Pittock, Sec'y." It was contended that Pittock had no authority to sign the petition for the company. The testimony showed that there was no resolution passed by the board of directors au-

thorizing the signing, and therefore it was contended that the signing was void. But it was shown that Pittock managed the business of the concern and transacted the entire business thereof, except such as arose out of the usual course thereof and then that it was Pittock's habit to consult with another director, Scott, and whatever they agreed to was carried into execution. Scott was president and Pittock was secretary. At the time of signing the petition, Scott and Pittock had consulted about the matter of the street improvement and had concluded that it would be to the best interest of the company to have the improvement made and, pursuant to this determination, Pittock signed the name of the company. The court held the company was bound.

It would seem that, close as the facts in the cited case are to the case at bar, the latter is much stronger in favor of the validity of the signature than is the former. In it the company was a *publishing* company whose general business had nothing to do with the improvements of streets. In the case at bar, the company is a *townsite* company, whose *very purpose and business* is to lay out and improve additions, build houses upon lots therein and improve the streets thereof, which, of course, would include the *very thing the petition was intended to accomplish*. In other words, when the secretary and treasurer, Lindsay, signed the petition asking that Lake avenue in the company's addition be improved, he was not doing an act involving the company in something entirely foreign to its purpose and business, but was helping to bring about the very object and purpose for which the company was organized. In addition to this, the facts, found to be true by the court in the finding of facts hereinbefore set out, present much stronger reasons for holding the company bound than those in the case just cited, although the facts in the cited case are strikingly similar as far as they go.

The petition for the improvement in the case at bar was signed in 1909; the suit on these tax bills was filed in September, 1910, and the case was tried in October, 1911. The court found that the town company had been incorporated *twelve years;* that shortly after its incorporation, and, before Lindsay signed this particular petition in question, the board of directors, at a meeting or meetings of directors, instructed John Donovan, the president, and Lindsay, the secretary, *to attend to all business of the company,* and placed the practical management of *all* the business in Lindsay's hands. The court also found that the directors were nonresidents except three, two of which three were Donovan and Lindsay; that after the company's property was taken into the corporate limits of the city, and before the petition in question was signed, the board of directors had before it a great many matters of business in which the company was interested, such as the construction of sewers, water mains, gas mains, street improvements, sidewalks, grading, etc., and *the instructions of the board were that Donovan and Lindsay should attend to such matters,* and that they *thereafter did* attend to them; that Lindsay usually, and Donovan, sometimes, signed petitions *asking for the improvement of streets abutting upon the company's property,* and that the board of directors *knew this,* and at the end of each year *ratified everything done during that year;* and that when the petition for the improvement in question came up, Mr. Donovan and Mr. Lindsay *agreed that Mr. Lindsay should sign the petition* and at Donovan's direction Lindsay signed it for the company. It would seem that if a corporation can be bound by the acts of an agent, done in the line of the very business for which the corporation is organized, and pursuant to a long course of conduct authorized and acquiesced in by the company, then this company was bound by the act of its agent in this case. And, as we have seen, since there is no legislative

requirement directing how the authority to sign such a petition shall be manifested, surely the company ought to be bound in this case the same as in any other.

The petition was signed in 1909 and consequently at the end of that year, as usual, the directors by a general resolution, ratified whatever the two men had done during that year. Even if this resolution, owing to its generality, would not have the effect of ratifying an act *foreign* to the general purpose of the corporation, yet as this act was *in line* with the object, purpose and work of the corporation, it should have such effect. In Day v. Fairview, 62 N. J. Law, 621, the court held that even if the action of an officer of a church corporation in signing a similar petition was defective, it could be, and was thereafter, ratified by the corporation. In the case cited the petition was dated and presented August 14, 1896, and the signing was not ratified until February 11, 1898, but the court held that the ratification related back to the time of the signing of the petition and rendered it as effectual as if the authority in the first instance had been expressly conferred.

In the case of Kansas City, Kansas, v. Cullinan, 65 Kan. 68, it was contended that a proceeding to pave was void because the petition therefor did not have the signatures of the owners of a majority of the front feet. It did not if the signature "Kaw Valley Townsite and Bridge Company by Charles F. Morse, Manager, by authority of the board of directors. Attest, E. E. Richardson, Secretary" did not bind the corporation. The trial court held that it did not because Morse had no authority to sign such petition for said corporation. And it was agreed that neither the charter nor by-laws nor any record of the Kaw Valley Townsite and Bridge Company expressly conferred upon Morse or any other person specific authority to sign said petition or any petition to pave said street

or any street; that the subject had never been considered by the board of directors before the petition was presented. Afterwards, however, and after suit was brought to invalidate the tax bills, the board of directors attempted to ratify Morse's act. The Supreme Court refused to decide the case on the question whether this attempted ratification amounted to anything or would relate back to the time of signing the petition, notwithstanding the intervention of the rights of the plaintiff therein, but said that it was a matter of grave doubt whether such retroactive effect could be accorded to an act of ratification, in a case like that one. But the court held that Morse *did* have authority, and that his act bound the company because the evidence showed that as the company was a townsite company its object and purpose was to have its streets improved; that Morse had the actual general management and control of the property; that he had previously signed other petitions for similar improvements without objection by the company; and that such facts was evidence tending to show the existence of authority to sign, and was not contradicted or overthrown by proof that the records of the company did not show that he was ever given any "specific authority" to sign that or any similar petition.

In Sparks v. Dispatch Transfer Co., 104 Mo. 531, l. c. 539, it is said: "It is now well settled that, when, in the usual course of the business of a corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business." In Moore v. Gaus & Sons Mfg. Co., 113 Mo. 98, l. c. 106, it is said: "The power of an agent or officer of a corporation to bind his principal is governed by the law of agency, and, where an officer has been permitted to manage all the business of a corporation, his authority to bind it

will be implied from the apparent power thus conferred upon him.''

The case of City of Sedalia v. Montgomery, 109 Mo. App. 197, decided by the St. Louis Court of Appeals, and the same case certified to and approved by the Supreme Court in 227 Mo. 31, is cited in support of the trial court's ruling. In that case, the Supreme. Court adopted and incorporated the opinion of the St. Louis Court of Appeals in its opinion. The only expression in either of said decisions bearing on the point in controversy here, is found in the St. Louis Court of Appeals' opinion, and is as follows: ''The officers of the corporate landowners, unless specially authorized by the board of directors, were without power to bind the corporations. [Morse v. City of Omaha, 93 N. W. 734.]'' This, however, is no more than a declaration that the officer of a corporation has no authority, *simply by virtue of his office,* to bind the corporation by signing the corporate name either to a petition for or a remonstrance against a street improvement. Of course, if the corporation has in no way conferred the authority on an officer to sign, and there is no evidence showing that it did, or that it knew that he had signed and made no objection thereto but acquiesced therein and ratified the act, then such signing would not bind the corporation. In this Sedalia case, the suit was to enforce the tax bills. Defendants contended that they were void because a remonstrance of a majority of the property owners had been filed against the proposed improvement. Plaintiff replied denying that a majority had remonstrated and showed that some remonstrators had withdrawn from the remonstrance, and that others were not legally entitled to remonstrate. In the course of the trial plaintiff offered to show, in addition to the above facts, that certain of the remonstrators *had not authorized anyone to sign for them.* Defendants did not offer any testimony tending to show that such au-

thority did exist but objected to the want of authority being shown, and contended further that remonstrators could not withdraw their names after it was once filed. The trial court decided against the tax bills. The St. Louis Court of Appeals reversed the case, and discussed at great length the many other questions involved in the case; but, on the point here involved, merely made the remark hereinabove quoted, and cited the case of Morse v. City of Omaha, 93 N. W. 734. There was no evidence that there was any authority to sign the names of certain remonstrators, while on the contrary there was at least an offer to prove that such authority in fact *was not given*. It was under these circumstances that the St. Louis Court of Appeals remarked that a corporation could not be bound by an officer in such cases, unless specially authorized. Of course this is an entirely different proposition from the question whether a corporation could not be held bound by the signature of an officer or agent, *if there was evidence to show* that, in any manner, *the officer or agent* in fact *did have such authority*.

So that neither the decision of the St. Louis Court of Appeals nor that of the Supreme Court can be said to decide the point here, where the evidence does show such authority, and the facts disclosing the authority have been established by the finding of the trial court.

In the Morse v. Omaha case (93 N. W. l. c. 738), the name of the ''Omaha Security Company by Thomas Brennan, President'' was claimed to have been signed without authority. The evidence showed clearly that it was signed without authority of any kind. ''The president testified that he signed the name of his corporation upon his own responsibility, without consultation with any of the directors,'' and there was no countervailing testimony. The trial court held that the corporation was not bound and that the petition was insufficient. The Supreme Court of Nebraska,

174 Mo. App.—40

*after reviewing the evidence* bearing upon the question of whether he had authority, said: "It is therefore very clear that the finding of the trial court that the petition in this respect is insufficient is fully sustained by the evidence." If a resolution of the board was required to confer that authority on him, and it could not be shown in any other way, why review the evidence going to show that no authority had been conferred in any way before deciding he had no such authority? The court also held that the signing of a petition for a street improvement was not a conveyance or incumbrance upon real estate. Of course, if it were, a resolution of the board might be necessary to make it valid.

In the Morse v. Omaha case, as in the Sedalia case, there was no evidence that the diretcors had authorized the officer in question to transact *all* the business of the corporation or, in fact, *any* of it. Neither of them, therefore, can be said to hold anything more than that the officer signing must have authority to so do, and has no power, by virtue of his office, to sign petitions for street improvements. That the Morse case does not hold anything more than this is shown by the decision of the same court in the case of Eddy v. Omaha, 103 N. W. 692. In that case the trial court had held (following as it thought, Morse v. Omaha, supra), that several corporations whose names were signed to the petition by their presidents were *not* bound thereby because not specially authorized. No express authority was given such officers to sign, but there was evidence showing that as a matter of fact they did have such authority. There was evidence showing they had signed other petitions for similar improvements and that the boards of directors had made no objection thereto and had acquiesced therein until after suit was brought. And because there was such evidence, the Supreme Court of Nebraska held that the corporations *were* bound, and, in

construing the Morse case, said (p. 694): "It is contended that the views above announced are inconsistent with the rule established in Morse v. City of Omaha, 93 N. W. (Neb.) 734. We do not so regard it. In that case it appeared affirmatively that the directors had no knowledge that any action had been taken purporting to authorize the improvement on behalf of the corporation. It did not appear that the circumstances were such that they ought to have taken notice that the president had signed for the corporation. The trial court found that the signature of the corporation by its president was unauthorized, and that finding was not set aside by this court." From this it would seem to clearly appear that the Morse case is not authority for the broad contention made by defendants. But that if the evidence shows that an officer has been authorized and directed to transact all its business and he has done so for years, including the signing of petitions for street improvements, with the knowledge of the directors, and year after year all his acts are ratified by the board, then the compand is bound by his act and neither it nor any third party can complain. Cook on Corporations, Vol. 3, sec. 717, speaking of the powers of secretary and treasurer, says: "The secretary of a corporation has no power, *merely as secretary of the company,* to make contracts for it. . . . The corporation may of course, expressly authorize the secretary to contract for it, or it may accept and ratify his contracts after they are made. . . . "

The treasurer of a corporation has no power, *merely by reason of his office as treasurer,* to contract for the corporation. But if the treasurer has been *accustomed* to make certain contracts for the corporation, and the corporation has acquiesced in them, *it is bound by a new contract* of that kind entered into by him."

If it be said that the question of whether authority was thus given then becomes a question of fact for the jury, or the trial court sitting as a jury, the answer is that in this case there is no contention that the signing was against the wishes of the corporation or of its directors, nor was there any evidence that it was. Besides, the trial court found the facts existed showing such authority in the manner heretofore indicated, but held that such authority was not sufficient as a matter of law.

It cannot be urged that because the statute resuires the petition for the improvement to be in writing therefore authority to sign such petition must also be in writing. The statute makes no such additional requirement and, therefore, does not change the rule by which an agent may sign the name of his principal to a writing under authority not in writing. [Tibbetts v. Street Ry. Co., 153 Ill. 147.]

In view, therefore, of the evidence in this case showing that Lindsay had such authority to sign the petition as would bind the corporation, we hold that the case should be reversed and remanded with directions to enter judgment for the plaintiffs upholding and enforcing the lien of the tax bills. All concur.