## LORENZO V. MORSE ET AL., APPELLEES, V. CITY OF OMAHA ET AL., APPELLANTS.

### FILED FEBRUARY 4, 1903. No. 12,153.

#### Commissioner's opinion, Department No. 1.

1. **Special Assessment:** PETITION: FOOT-FRONTAGE: VALID LEVY: RE-PAVING: INJUNCTION. Under the provisions of section 110, chapter 12a, Compiled Statutes, 1897, a petition signed by the owners of a majority of the foot-frontage is requisite to a valid levy of a special assessment against property specially benefited to pay for repaving, and the collection or enforcement of such special assessment will be enjoined where it does not appear that a petition so signed was first obtained.

2. **Insufficiency of Petition.** Petition for repaving in case at bar examined, and *held* not signed by owners of a majority of the foot-frontage.

3. **Assessment:** STATUTORY PROVISIONS. Statutory provisions authorizing assessments of special taxes against property benefited by public improvements, are to be strictly construed, and it must affirmatively appear that the taxing authorities have taken all steps which the law makes jurisdictional; the failure of the record to show such proceedings, will not be aided by presumptions.

4. **Laches:** ESTOPPEL. One who has not been guilty of laches, will not be estopped to object to the payment of a special assessment which is void for want of jurisdiction in the taxing authorities to make the assessment.

5. **Repavement of Street:** PETITION: STATUTORY PROVISION: INCUMBRANCE: CONVEYANCE. A petition asking for the repavement of a street does not come within the provisions of section 4, chapter 36, Compiled Statutes, 1901, as being an incumbrance or conveyance of land, and where the owner in fee signs such petition the land will be bound thereby without the signature of his wife. *McLain v. Maricle*, 60 Nebr., 353, followed.

6. **Corporation as Petitioner:** UNAUTHORIZED SIGNATURE. The president or secretary of a corporation, either singly or jointly, can not bind the corporate property by signing the corporate name to a petition asking for a street improvement without being specially authorized.

7. **Repaving Street:** ABUTTING OWNERS: ORDINANCE: THIRTY DAYS: ASSESSMENT. A statute authorizing the city council to repave

Syllabus by court; catch-words by editor.

streets under certain conditions, provided that the abutting
property owners should have thirty days from the date of ap-
proval and publication of an ordinance declaring such improve-
ment necessary within which to designate the paving material.
No other reference was made in the statute to such ordinance
declaring the improvement necessary. The property owners
were given thirty days from the publication of a certain ordi-
nance within which to designate the paving material. *Held*,
That the failure of the council to pass and publish an ordinance
declaring the improvement necessary would not invalidate the
assessment.

8. **Unconstitutional Law:** DETERMINATION UNNECESSARY. The appel-
late court will not pronounce a statute unconstitutional and
void where a determination of the case does not require that
the constitutionality of the statute be determined.

9. **Notice.** Notice of the sitting of the board of equalization ex-
amined, and *held* to comply with the requirements of the
statute.

10. **Special Assessment.** The only foundation for special assess-
ments rests in the special benefits conferred upon the property
assessed, and, therefore, the frontage rule per foot can not be
adopted unless the benefits are equal and uniform.

11. **Assessment:** SPECIAL BENEFITS: FOOT-FRONTAGE: REVIEW: IN-
JUNCTION. Under the provisions of section 161, chapter 12a,
Compiled Statutes, 1897, the council, before assessing property
for special benefits, according to the rule per foot-frontage,
must find that the benefits accruing thereto are equal and
uniform. However, where the council fails so to find, a tax-
payer with notice, dissatisfied with the rule per foot-frontage
adopted, should cause such action to be reviewed, and on
failure so to do he will not, in a proceeding to enjoin the col-
lection of such tax, be heard to say that the tax is void.

12. **Special Assessment:** MATTERS TO BE CONSIDERED IN THE PREMISES.
Where it affirmatively appears of record that the council in
levying the special assessment took into consideration the ques-
tion of the extent of the benefits, and, preliminary to the levy,
formally and specifically found that each parcel of land is
specially benefited to an amount equal to the tax assessed
against it, it is immaterial that each parcel has been assessed
an equal amount per front foot, as a finding that the benefits
are equal and uniform need not be in the exact language of
the statute.

APPEAL from the district court for Douglas county.
Injunction. Facts appear in opinion. Heard below be-
fore FAWCETT, J. Judgment for plaintiffs. *Affirmed.*

*James H. Adams* and *Charles E. Morgan,* for appellants.

*Franklin J. Griffen* and *Silas Cobb, contra.*

KIRKPATRICK, C.

This is a proceeding in equity brought by Lorenzo V. Morse and other taxpayers against the city of Omaha and Albert G. Edwards, as city treasurer, to enjoin the defendants from collecting or attempting to collect certain special taxes and assessments, and for a decree holding such taxes void and a cloud on the petitioners' title, and praying for a perpetual injunction, and for a decree removing the cloud from the title to their real estate because of the void taxes and assessments complained of. Trial was had which resulted in findings by the trial court of all the issues in favor of the petitioners, and a decree enjoining the city and its officers from collecting or attempting to collect such taxes, and removing the cloud created by such special taxes and assessments from the title to petitioners' lands. From this decree the cause is brought to this court upon appeal by the city of Omaha and its treasurer.

Very many questions are presented by the record and ably argued by opposing counsel. Section 110, chapter 12*a*, Compiled Statutes, 1897,\* the charter for cities of the metropolitan class, among other things, contains the following provision: "No repaving shall be ordered except upon the petition of the owners of a majority of the taxable front feet in any improvement district." It is disclosed by the record that street improvement district No. 617 was created by ordinance in the city of Omaha, and a petition was duly presented to the city council praying for the repaving of the streets in said district, which petition purported to contain the signatures of the owners of more than a majority of the taxable front feet within the paving district. The first contention of the petitioners

---

\* As amended, Cobbey's Annotated Statutes, sec. 7562.

in the trial court, was that the petition which was presented to and acted upon by the city council did not in fact contain the names of the owners of a majority* of the front feet; and the trial court so found.  In answer to this contention and the finding of the trial court, it is urged by appellants in this case, first, that the petition upon which the city council acted being regular upon its face, purporting to contain the requisite signers, and the repaving having been done, the sufficiency of the petition can not now be attacked collaterally in an action like this; and second, that the petition did, in fact, contain the names of the owners of a majority* of the foot-frontage within the district.

The correct determination of the first question must depend upon whether a petition in fact containing the signatures of the owners of a majority of the taxable front feet is a jurisdictional prerequisite to valid action by the council in making the assessment.  It may, in the first place, be remarked that the rule firmly established in this state by a long line of decisions is that statutory provisions authorizing the levy and collection of special assessments shall be strictly construed, and that the record of such proceedings must on its face affirmatively show a compliance with all the conditions made necessary by the statute to a valid exercise of the taxing power.  In discussing this principle, IRVINE, C., in *Hutchinson v. City of Omaha*, 52 Nebr., 345, 349, expressing an individual opinion, said: "Such grants of power hold out temptations and opportunities for the confiscation of property to such an extent that the protection of property rights demands that they should receive the very strictest construcion, and that the courts should be insistent that the proceedings should be of the utmost regularity."  Again, in *Batty v. City of Hastings*, 63 Nebr., 26, it was said (p. 32): "It is the settled construction of the statutes of this state

---

* This use of the word majority is a solecism, but it occurs in the statute.—W. F. B.

relating to municipal corporations that the several steps required to be taken in assessing the cost of public improvements against property benefited must be construed strictly." *Medland v. Linton,* 60 Nebr., 249; *Grant v. Bartholomew,* 58 Nebr., 839; *Smith v. City of Omaha,* 49 Nebr., 883; *Harmon v. City of Omaha,* 53 Nebr., 164.

Keeping in mind the principle referred to, we will proceed to an examination of the question presented. From a reading of the language quoted, it is clear the act contains a positive prohibition against the city council taking any steps to repave a street in the absence of a petition signed by the owners of a majority of the taxable front feet in any improvement district. We are at a loss to see how the prohibition could have been couched in language stronger or more imperative. Every step taken by the council towards repaving, if taken in the absence of the petition designated by this act, is unlawful, and we are unable to see how the action of the council taking property in this manner could be said to be the taking of private property for a public purpose by due process of law.

Judge Cooley, in his work on Taxation [2d ed.], page 656, in construing provisions identical with that involved herein, says: "Their legislative action, if properly taken, is conclusive of the propriety of the proposed improvement, and of the benefits that will result, if it covers that subject, but it will not conclude as to the preliminary conditions to any action at all; such, for example, as * * that the particular improvement shall be petitioned for or assented to by a majority or some other defined proportion of the parties concerned. This last provision is justly regarded as of very great importance, and a failure to observe it will be fatal at any stage in the proceedings. And any decision or certificate of the proper authorities, that the requisite application or consent had been made, would not be conclusive, but might be disproved."

In 2 Dillon, Municipal Corporations, section 800, in discussing this question, it is said: "Where the power to pave or to improve depends upon the assent or petition

of a given number or proportion of the proprietors to be affected, this fact is jurisdictional, and the finding of the city authorities or council that the requisite number had assented or petitioned is not, in the absence of legislative provision to that effect, conclusive; the want of such assent makes the whole proceeding void, and the non-assent may be shown as a defense to an action to collect the assessment, or may, it has been held, be made the basis for a bill in equity to restrain a sale of the owner's property to pay it."

In the statute under consideration there is an entire absence of any provision tending to make the action of the city council in passing upon the petition final and conclusive.

*Mulligan v. Smith*, 59 Cal., 206, is a leading case upon this question. There it is said (p. 229) : "When, therefore, the legislature prescribed that a petition from the owners of a majority in frontage of the property to be charged with the cost of the improvement was necessary to set the machinery of the statute in motion, no step could be taken under the provisions of the statute, until the requisite petition was presented. It was the first authorized movement to be made in the opening of the avenue. When taken, officers who were to constitute and organize a board of public works were authorized to organize. Until it was taken, they had no such authority. They could not legally act at all; or if they acted, their proceedings would be unauthorized and void. The presentation of the petition required by statute, was therefore essential. It was, as other courts, in construing similar statutes, have expressed it, a jurisdictional fact, that may not be presumed or inferred, upon which rested all the subsequent proceedings authorized by the statute."

In *Ogden City v. Armstrong*, 168 U. S., 224, 18 Sup. Ct. Rep., 98, 42 L. Ed., 444, the supreme court of the United States, quoting *Mulligan v. Smith* with approval, said (p. 235) : "We agree with the court below in thinking that no jurisdiction vested in the city council to make an

assessment or to levy a tax for such an improvement, until and unless the assent of the requisite proportion of the owners of the property to be affected had been obtained, and that the action of the city council in finding the fact of such assent was not conclusive as against those who duly protested. The fact of consent, by the requisite number, in this case to be manifested by failure to object, is jurisdictional, and in the nature of a condition precedent to the exercise of the power."

The same doctrine is announced in *Sharp v. Speir*, 4 *Hill* [N. Y.], 76, where it is said (p. 88) : "Defendant insists that the petition conferred jurisdiction on the trustees    *    *    *    provided they should judge that a majority of the persons intended to be benefited had signed; that, by granting the petition and proceeding with the work, the trustees adjudicated upon the question, and determined that a majority had petitioned; and that this judgment of the trustees is conclusive upon all persons so long as it remains unreversed. It is impossible to maintain that in this matter the trustees were sitting as a court of justice, with power to conclude any one by their determination. True, they were called upon to decide for themselves whether a case had arisen in which it was proper for them to act, but they acted at their peril. They could not make the occasion by resolving that it existed. They had power to proceed if a majority petitioned, but without such petition they had no authority whatever. They could not create the power by resolving that they had it,"—citing *Graves v. Otis*, 2 Hill [N. Y.], 466.

In *Auditor General v. Fisher*, 47 N. W. Rep. [Mich.], 574, it is said: "The determination of a township board that a majority of the property holders have signed a petition for a local improvement is not conclusive, and, in the absence of statutory provisions to the contrary, the question may be investigated in a collateral proceeding."

As sustaining the rule, the following cases may be cited: *Miller v. City of Amsterdam*, 149 N. Y., 288; *Vil-*

*lage of Hammond v. Leavitt,* 181 Ill., 416; *Kline v. City of Tacoma,* 11 Wash., 193, 39 Pac. Rep., 453; *Kahn v. Board of Supervisors,* 79 Cal., 388; *Corry v. Gaynor,* 22 Ohio St., 584; *Allen v. City of Portland,* 35 Ore., 420.

This court, in considering charter provisions like that involved herein, has many times said that the number of signers to the petition made necessary by statute was jurisdictional, although the question seems not in each case to have arisen in a collateral attack. *Harmon v. City of Omaha,* 53 Nebr., 164; *Horbach v. City of Omaha,* 54 Nebr., 83, 88; *Leavitt v. Bell,* 55 Nebr., 57; *Grant v. Bartholomew,* 58 Nebr., 839; *City of Beatrice v. Brethren Church of Beatrice,* 41 Nebr., 358, 362; *State v. Birkhauser,* 37 Nebr., 521.

From an examination of the authorities upon the question we are of the opinion that the great weight of authority as well as right reason support the conclusion which we have reached, that is, that the petition with the number of signers required by statute is jurisdictional to the right of the council under an ordinance to repave a street; and that, being jurisdictional, it follows that the action of the city council, when not supported by such a petition, may be collaterally attacked. We are aware that courts whose decisions are entitled to great respect hold to a doctrine opposed to the conclusion which we have reached. This is particularly true of the state of Indiana, which in several instances seems to have passed upon the question, reaching the conclusion that the action of the council based upon a petition which was sufficient upon its face, was not subject to collateral attack. *Board of Commissioners of Lawrence County v. Hall,* 70 Ind., 469; *Faris v. Reynolds,* 70 Ind., 359. But a careful examination of these decisions has led us to the conviction that they can not be considered as authority upon the question here presented, involving, as they do, largely political, rather than property rights.

In *Lincoln St. R. Co. v. City of Lincoln,* 61 Nebr., 109, 146, cited as authority in support of the contention of

34

appellants herein, a ruling upon the question under consideration was not necessary to a determination, and the discussion thereof must be held to be rather the individual expressions of the writer of that opinion, than the determination of this court. While we concede that there is some merit in the contention of the city of Omaha, appellant, that a taxpayer should not be permitted to stand by while valuable improvements are in progress redounding to the benefit of his property, and then, when called upon to pay his share of the expense, be heard to object that the council in its action had no jurisdiction, we can not say that even such conduct, if free from laches, estops him. Every man has a right to assume that the public officers will do their duty and observe the law. If he is to be charged with notice of what the law contains, he may well be permitted to assume that the city council will not proceed with an improvement without observing the law. The law does not make it incumbent upon him, in order to preserve his rights, to protest against an improvement, or to make inquiry whether the council has complied with statutory prescriptions, but it does, in our opinion, very clearly and in mandatory tones, enjoin upon the council to proceed only upon a petition signed by those owning a certain definite proportion of the foot-frontage. While it is true that he who objects to an assessment to pay for accomplished improvements presumably benefiting his property may not always be deserving of unalloyed sympathy, we think that, under a statute such as this, to hold him estopped, as a general rule, from basing an objection on the sufficiency of the petition at any stage of the proceedings, would result more often in hardship and injustice than would a rule, in our opinion wholly in harmony with the statute as well as the authorities, that the council, in making the improvement, acts at its peril. The law under which the council acts is plain. The work undertaken by it is of vast importance. Every circumstance is calculated to put the authorities upon their guard. Their conduct in the premises is fraught with the

possibility of great hardship.  The system of special assessments for local improvements, at its best, is not perfect.  Even where the owners of a majority of the foot-frontage have united in a valid petition, and the council has plenary power to proceed, the dissenting owners might still be able to make out a moral case of hardship.  But any grievance they might have in such case must, in the nature of things, be an incident to the steady development of metropolitan life among a progressive people.  Nevertheless, the owner, whose peculiar knowledge of his own affairs and the status of his property has led him to the conviction that the improvement would not be beneficial to him, if obliged to pay therefor, has the guaranty of the statute that the council can not take valid action binding upon him, until at least a majority of the foot-frontage is represented upon the petition, and upon this guaranty we think he should in a case such as this be permitted to rely.  *Mulligan v. Smith,* 59 Cal., 206; Cooley, Taxation,* p. 573; *Harmon v. City of Omaha,* 53 Nebr., 164.

It is next contended on behalf of the city that, even if the action of the city council was subject to examination in a collateral proceeding, in the case at bar the evidence discloses that the petition was signed by the requisite number of the abutting property owners.  It is alleged in the petition and found by the trial court that G. N. Clayton, who signed as owner of lot 28, Adolph Bowman, who signed as owner of lot 15, and A. W. Griffen, who signed as owner of lot 14, were each, at the time of the signing of the petition, married men, who were occupying the several lots named with their families as homesteads.  The evidence to sustain the finding of the trial court, is meagre, but we will assume its sufficiency for the purposes of this decision.  It is contended on behalf of the petitioners that the petition would be invalid as to these three described lots unless duly signed by the wives of the several owners named.  Counsel cite section 4, chapter 36, Compiled Statutes, 1901 (Annotated Statutes, sec. 6203), as decisive of the question, to the effect that no conveyance

* 1st ed.

or incumbrance of a homestead is valid, unless in its execution and acknowledgement both husband and wife join. We are clearly of the opinion that the signing of a petition for a street improvement is not a conveyance or incumbrance within the meaning of the section quoted. When the special tax or assessment ripens into an incumbrance, which it probably does, it is because of the action of the city council and taxing officers acting in accordance with the laws authorizing the assessment. While, as we have heretofore found, a petition signed properly is a jurisdictional prerequisite, it is not in any sense an incumbrance or a conveyance in itself. The nature of the interest of the wife in the homestead, the fee to which is in the husband, is discussed fully by this court in *McLain v. Maricle*, 60 Nebr., 353, HOLCOMB, J., speaking for the court. We are satisfied with the views therein expressed, and are of the opinion that the judgment of the trial court in this respect is wrong, and can not be sustained.

It is next urged by appellees in support of the judgment that even if it should be found that it was not necessary to the validity of the signatures of the persons named, who were occupying lots with their families as homesteads, that the wives should sign the petition, and admitting that the petition was sufficient as to those names, yet from the evidence the court was justified in finding that the petition respecting the names of the other signers was insufficient. It is disclosed that the total foot-frontage on the street being repaved was 1,563.8 feet, one-half of which would be 781.9. It appears that the name of Mary Larson, owning lot 32, representing 32 feet, was signed by her husband, and not in her presence, and without her knowledge or consent. The testimony also shows that W. C. Janes, who signed for lot 20, representing 64 feet, was not the owner of record of that lot, but that the title to the same stood in the name of Annie Janes, his wife. The testimony shows that Frank D. Brown signed as owner of lot 27, representing 64 feet, while in fact that lot was owned jointly by himself and G. N. Clayton, and

his signature should have been counted only for 32 feet. Deducting the foot-frontage of the persons named from the petition, the frontage properly signed would be reduced by 128 feet, and after this deduction the petition is insufficient. Again, it is disclosed by the evidence that the name of the Omaha Security Company, a corporation, shown to be the owner of lot 16, signing for 64 feet, was signed to the petition by Thomas Brennan, president. From the articles of incorporation of the company it appears that its business was to be transacted by a board of directors, and that no action was taken by this board regarding the improvement in question, and the president was never authorized to sign the petition. In fact, the board had no knowledge that the petition was signed. The president testified that he signed the name of his corporation upon his own responsibility, without consultation with any of the directors. The rule seems to be settled that the president and secretary of a corporation, whether acting singly or jointly, are without power to bind the corporation by signing a petition for a street improvement, unless specially authorized so to do by the board of directors. *Mulligan v. Smith, supra; Liebman v. City of San Francisco,* 24 Fed. Rep., 705, 706; *Minor v. Board of Control of the City of Hamilton,* 10 Ohio C. C. Rep., 4. It is therefore very clear that the finding of the trial court that the petition in this respect was insufficient is fully sustained by the evidence.

The determination of this case might well be rested on what has been said, but counsel have devoted much of their briefs and oral argument to a discussion of some other questions of considerable importance, and they will be given brief consideration. It is contended by appellees that the assessment is invalid because of the failure of the council to pass an ordinance declaring the improvement contemplated necessary. This contention is based upon the following portion of section 110, chapter 12a, Compiled Statutes, 1897 (as amended, Annotated Statutes, sec. 7562): "And whenever any of the improvements herein

named  *  * shall be declared necessary by the mayor and
city council, and an improvement district shall have been
created, then it shall be the duty of the mayor and council
to give the property owners within such district thirty
days from the date of approval and publication of the
ordinance declaring such improvement necessary, to desig-
nate by petition the material to be used in the paving of
the streets," etc.   It is apparent from a reading of this por-
tion of the section, which appears to have been added as
an amendment in 1897, that the legislature assumed that
one of the required steps to be taken by the council pre-
liminary to the making of the improvement was the pas-
sage of an ordinance declaring the improvement necessary.
It seems to have been the theory of the law-framers that
the abutting owners, required to pay for the improvement,
should be given a choice in the matter of material.   The
provision quoted clearly provides for this option in the
abutting owner.   However, it was necessary to fix a limit
of time within which the choice should be made.   Accord-
ingly, the provision says that this time shall extend for
thirty days after the date of approval and publication of a
certain ordinance, viz., "the ordinance declaring such im-
provement necessary."   The situation seems to be as if the
legislature, intending to provide that the abutting owners
shall have the selection of the material, and intending to
limit the period within which they shall be obliged to
express their preference, had prescribed that limit by
commencing with the date of a certain ordinance, pre-
sumably already provided for, and designating that or-
dinance as the one declaring the necessity of the improve-
ment.   In the provision for a petition of the abutting
owners, the legislature has spoken clearly and in manda-
tory tones.   So also with the provision regarding the
status of the intersection fund.   There is no difficulty
under the authorities and this statute to hold these pro-
visions jurisdictional.   But when we come to a considera-
tion of the point raised by appellees as to the ordinance
declaring the improvement necessary, reference to which

is made for the first time in a portion of the statute clearly intended to govern in the matter of designating the material, while we have given the matter careful consideration, we can not see that the legislature has said that the passage, approval and publication of an ordinance declaring the work necessary is one of the prerequisite steps to a valid assessment. If it had done so, we would, doubtless, experience no difficulty under the authorities cited by appellees in holding that such declaration was also a necessity. Many authorities are cited to sustain the contention of appellees, but upon examination it is shown that they were under statutes which spoke directly and clearly upon the declaration of necessity. In the case at bar it appears that an ordinance, duly passed, approved and published, gave to the abutting owners thirty days from its date and publication within which to designate the material. Nothing besides the selection of the material remained for the owner to do. Under these circumstances, notwithstanding this ordinance can not in strictness be said to contain a formal declaration of the necessity of the improvement, it seems to us that this portion of the statute has been substantially complied with. Whether a provision similar to that contained in many statutes requiring the council first formally to declare the necessity of an improvement before proceeding therewith is wise and salutary need not be discussed, but section 110 does not say, nor are we warranted by the language therein to infer, that the law-framers intended that the formal declaration of necessity should precede the improvement, and that the failure so to declare shall vitiate subsequent proceedings; and the safer rule would seem to us to be that where so much of the statute as is mandatory and jurisdictional, regarding which the legislative intent is unambiguous, has been strictly complied with, and nothing remains but the designation, either by the abutters, or, upon their failure by the mayor and council, of the paving material, thirty days' notice, by ordinance formally passed, approved and published, to

owners to make the selection, should be held to be sufficient.

It is next contended that section 20 of the charter of 1897 (as amended, Annotated Statutes, sec. 7469) is unconstitutional and void. It is well settled that an appellate court will not pass upon the constitutionality of a statute where that question is not necessary to a determination of the case under consideration. We do not think that the question of the constitutionality of a portion of the statute under consideration is material to a disposition of the case at bar, and, therefore, following the rule just referred to, we will leave that matter undecided.

It is contended by appellees that the publication of the notice of the sitting of the board of equalization is insufficient, and was not for the necessary length of time. It is disclosed that the council convened on Tuesday, September 13, 1898, at 10 o'clock A. M., for the purpose of equalizing the assessment. It is also disclosed that notice of this meeting was published in the Omaha *Bee* and the Omaha *World-Herald,* on the 6th, 7th, 8th, 9th, 10th, 11th and 12th days of September, being each day for several days immediately prior to the meeting of the city council sitting as a board of equalization.

A further contention is that the notice was insufficient, in not giving the names of the abutting property owners. No good reason has been offered why this should be done, and we are of opinion that under the statute it was not necessary. The notice does set out the lots to be affected by the levy by their numbers, and as it seems to have been published the necessary length of time, we are of opinion that the contention of appellee with regard to this notice can not be sustained.

It is shown by the record in this case that the property within the improvement district was assessed at a uniform rate of a little over $2.50 per front-foot throughout the district. Appellees insist that there is nothing in the record to show that the council found as a matter of fact that the benefits accruing to the abutting property would

be equal and uniform throughout the district. Section 161 of chapter 12a (Annotated Satutes, sec. 7629) provides that all special assessments to cover the cost of any public improvements shall be assessed on the property abutting the improvement "to the extent of the benefits to such lots," by reason of the improvement, such benefits to be determined by the council, sitting as a board of equalization, after due notice, "and in cases where the council sitting as a board of equalization, shall find such benefits to be equal and uniform, such assessment may be according to the foot-frontage." From a reading of the entire section we are certain that the evident purpose of the legislature was to guarantee to the property owner that his property would never be assessed for special improvements in excess of the benefits specially accruing thereto by the improvement; and to subserve this evident legislative intent we think the whole section should be construed. It must be constantly borne in mind that the whole and only foundation for special assessments lies in the special benefits conferred upon the property assessed, and an assessment in excess of the benefit so conferred is a taking of property for a public use without compensation, and is illegal. *Cain v. City of Omaha,* 42 Nebr., 120; *Hanscom v. City of Omaha,* 11 Nebr., 37. All, therefore, that the legislature has made essential in the proceedings leading up to a special assessment must be strictly followed, no presumptions coming to the aid of him who seeks to enforce the lien of a special tax. *Merrill v. Shields,* 57 Nebr., 78. In this case, appellants must show that the taxes were legally levied; and in *Equitable Trust Co. v. O'Brien,* 55 Nebr., 735, 737, this is said to be "no new doctrine in this state." *Leavitt v. Bell,* 55 Nebr., 57. That property shall be assessed according to the benefits specially accruing is mandatory. It would be impossible to adopt any other construction without opening the door to the gravest dangers and holding out to extravagant municipal authorities the strongest temptations to the confiscation of pri-

vate property. But absolute accuracy, of course, can not be expected, and the determination of the extent of the benefits must therefore be left to some tribunal, and the statute plainly says that it shall be lodged in the council sitting as a board of equalization, after due notice to the owners. It is fairly implied in the language ·employed that this determination shall be preliminary to the assessment of the cost, that it shall be formal and specific, that is, that the record shall show that the council actually took the subject of the extent of the benefits under consideration and came to a conclusion thereon, and further, that the action of the council was based upon and was in harmony with such conclusion. To the same effect, and carrying out the same general idea, is the next sentence, namely, "and in cases where the council * * * shall find such benefits to be equal and uniform, such assessment may be according to the foot-frontage." This is tantamount to saying that the assessment shall not be according to the foot-frontage, unless the council shall have found the benefits to be "equal and uniform." Unless the benefits are equal, the foot-frontage rule is a taking of private property without due process of law, and is illegal. We think the council in this case adopted the foot-frontage rule. In the notice of the sitting of the board of equalization, after giving the sum necessary to be raised by the proposed assessment, it is said, "which· sum it is proposed to assess upon the lots and real estate on both sides of said 26th avenue, within said district, according to the usual scaling back process, pro rata per foot-frontage at the rate of $2.5089579 per foot, as follows," etc. This notice was first published September 5, 1898. It is apparent that the council proposed an assessment according to the foot-frontage. Does the record show that before passing the ordinance levying this special tax the council did make the finding which by statute is a condition precedent to the adoption of the rule per foot-frontage? The levy ordinance was passed October 10, 1898, and approved October 14, 1898. Therein it is re-

cited that "whereas it having been and being hereby adjudged, determined and established that the several lots and pieces of real estate hereinafter referred to have each been specially benefited to the full amount herein levied and assessed against each of said lots and pieces of real estate respectively by reason of the repaving," etc. The amounts against each lot or parcel of land are then set out in the ordinance, being the same as those in the notice of September 5. There is no reason for holding that the finding contemplated by the statute as the basis for an assessment according to the foot-frontage shall be in the exact language of the statute. We are certain that the council, in the ordinance referred to, after due notice, specifically found as a fact that the property abutting on the district was specially benefited to the full amount assessed against each tract of land. It is certain that the question of the extent of the benefits was determined by the board after deliberation and a hearing. The ordinance contains a specific finding of such benefits. There is no uncertainty; nothing is left to conjecture. What the council as a board of equalization adjudged to be the amount of benefit to each parcel of land abutting may be readily and certainly determined from an examination of the ordinance. So far as any particular property in this district is concerned, we have here an ordinance, passed and approved after due notice and a hearing, declaring, first, that such property is found or adjudged to be benefited to a certain extent by reason of an improvement; and second, that it shall be assessed to that extent to pay for such improvement. But even if the city council had failed to make this finding in the specific manner it did, we are of opinion that such failure would not render the levy void and subject to collateral attack. We think that, at most, the failure would be erroneous, rendering the action taken liable to be reversed upon review. Section 161, chapter 12*a*, Compiled Statutes, 1897 (Annotated Statutes, sec. 7629), provides that "all such assessments and findings of benefits shall

not be subject to review in any legal or equitable action, except for fraud, gross injustice or mistake." This provision, in effect, amounts to a declaration that the action of the city council in finding that the property is benefited to the full extent of the amount levied, in order to justify an assessment per foot-frontage, can be reviewed for fraud, gross injustice or mistake. The taxpayer has notice of the sitting of the city council to be held for the purpose of equalizing and making the levy, and if he is dissatisfied with the action taken concerning the assessment by front foot, it is his duty to have such action reviewed by a proper proceeding, and if he fails to take such action, he can not be heard in a proceeding by injunction to allege that the tax is void for failure of the council to make the finding referred to. *Webster v. City of Lincoln,* 50 Nebr., 1. It seems that the statute in this regard has, in the case at bar, been fully complied with, and the finding of the trial court upon this point can not be sustained under the record.

Some of the contentions of the parties herein considered have not been necessary to a determination of this case, but have been discussed for the reasons already given. We have carefully examined the record, and are satisfied that the special assessment sought to be sustained by appellants is wholly void for the reason that the petition asking the improvement was not signed by the owners of a majority of the taxable foot-frontage in the district. The judgment of the trial court holding such assessment · void, and enjoining its collection, is right, and it is recommended that the same be affirmed.

Hastings and Lobingier, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.