CATHERINE A. MURPHY, APPELLANT, V. METROPOLITAN UTILITIES DISTRICT ET AL., APPELLEES.

FILED APRIL 10, 1934. No. 28864.

*S. L. Winters*, for appellant.

*Dana B. Van Dusen, contra.*

Heard before ROSE and PAINE, JJ., and LIGHTNER, REDICK and THOMSEN, District Judges.

REDICK, District Judge.

This is an action brought by appellant to cancel and enjoin the collection of a special assessment levied against her real estate by the Metropolitan Utilities District of Omaha for the construction of a water main in the street adjoining same. The middle of the street is the boundary of the city limits of Omaha, and the main was laid within the city limits. Plaintiff's property consists of a 40-acre tract on the west side of Forty-second street, in which the main was laid, and has never been subdivided into lots, but the property to the east and west is platted, the lots on the east being serviced with water and gas mains and that on the west to a small extent. It will not be necessary to set forth the pleadings of the respective parties, but their contentions will appear later on. Hearing in the district court resulted in a decree for the defendant, and plaintiff appeals.

The defendant Metropolitan Utilities District is a corporation maintaining a system of water works and gas works in the city of Omaha, and is invested by the legislature with certain powers appropriate to its functions, among others to build water mains and levy special assessments upon property benefited to pay the cost thereof,

and it was in the exercise of these powers that the assessment attacked was levied.

Chapter 110, Laws 1921, was an act authorizing cities and metropolitan utilities districts to create water main districts and levy special taxes to pay the costs of water mains constructed therein. The sections of said act so far as material to the questions presented for our determination are as follows:

Section 1 granted authority to metropolitan utilities districts to create a water main district and to make extensions or enlargements of water mains.

Section 2 provided that the power should be exercised by resolution of the board of directors.

Section 3 provided for the publication of the notice in the official paper of the city within the metropolitan utilities district, addressed generally to the owners of real estate within the district, notifying them of the creation of the water main district, and notifying them that they have 30 days after such publication to file protest against the creation of said district.

Section 4 provided for the construction if no protest.

Section 5 is as follows: "That upon the completion of an extension or enlargement of any water or gas main, or other utility service, in any such district, the actual cost thereof shall be duly certified to the council or directors of such city or village or metropolitan water, or utilities district, and thereupon it shall be the duty of such council or directors to assess such cost, not exceeding the cost of installing a six-inch water main or a four-inch gas main, or of other utility service, as the case may be, upon all real estate in said district, in proportion to the frontage of said real estate upon said main or utility service. The cost of any such extension or enlargement in excess of the estimated cost of installing a cast iron six-inch water main * * * heretofore authorized to be assessed and levied against the real estate in said district, shall be paid out of the 'water fund' * * * of such city, or village, or metropolitan water district, or metropolitan utilities district, if there be such fund, and

if such city or village has no 'water fund,' * * * then the same shall be paid out of the general fund." Provision is then made for levying a special tax in ten instalments, and the section then proceeds: "Prior to the levy of said special tax as herein provided, the same shall be equalized in the same manner as provided by law for the equalization of special assessments levied in such cities, villages, and the metropolitan city within such metropolitan water district, or utilities district, respectively." It then provides that the entire cost of laying said water main may be assessed upon the property of the district with the consent of the owners thereof.

Section 7 provides that the city or utilities district may by resolution elect to proceed under the provisions of the act.

Section 8 is as follows: "That any metropolitan water, or utilities district is hereby given power to extend water mains, gas mains, and other utility service under its operation and management beyond the corporate limits of the city so as to include adjacent territory, precincts, towns, or villages, even though the same be in an adjoining county or counties, and may create such water main, gas main, and other utility service districts within such adjacent precincts, cities, towns, and villages, even though the same be located in an adjoining county or counties." The section then directs what proceedings shall be taken where the district extends into an adjoining county.

On September 18, 1929, the committee on services and extensions of the board of directors of the utilities district recommended the creation of water main district No. 1304 in accordance with resolution therewith submitted. To this report was attached a plat showing the boundaries of the proposed district to include certain lots in Orchard Place on the east side of Forty-second street and within the city limits, and the east 132 feet of plaintiff's tract adjoining such limits, the district extending on Forty-second street from P street on the south to Orchard Avenue on the north.

The directors of the district then passed a resolution creating said water main district No. 1304, to comprise that part of Forty-second street between Orchard Avenue and P street, "and shall include therein the following described real estate, to wit:" Then follows a description of the east 132 feet of plaintiff's land. The resolution then provided for laying an 8-inch water main, and the publication of notice in the official paper of the city of Omaha of the creation of said district; and the ordering of said water main, and notifying the owners that they would have 30 days after the publication of the notice to file written protest. Said resolution further contains the election of the district to proceed under the provisions of the act of the legislature above quoted. Notice was duly published and December 4, 1929, a resolution was passed reciting that no protest had been received, and the engineering department had estimated the cost at $1,460, and directing that said water main be constructed by day labor. The validity of these proceedings is not attacked except upon grounds urged against the assessment which will be hereinafter discussed.

October 22, 1929, resolution was passed by the board of directors providing for the assessment and equalization of the taxes upon the real estate in said district to pay the cost of said water main extension which was fixed at $1,245.34. The resolution contained the following: "Be it further resolved, that the board of directors finds that the amount to be assessed and levied upon the real estate within said water main district per front foot to pay the cost of said water main extension is and determined to be, upon the several pieces of real estate in the said water main district in the city of Omaha and county of Douglas, as follows, to wit:" Then follows a description of the east 132 feet of plaintiff's land, assessed in two parcels, one for $241.61 and the other for $410.27.

It was further resolved that the board of directors sit as a board of equalization on November 5, 1930, for at least one day from 10 a. m. until 5 p. m. "For the

purpose of considering and equalizing the proposed levy of special taxes and assessments as shown by the preceding resolutions, and for the purpose of correcting any errors therein, and for the hearing of all complaints that the owners of propery so to be assessed and taxed may make against said special assessments so proposed to be levied to cover the cost of the extension of said water main in said water main district." It further provided for the publication of notice in the official paper of the city of Omaha, of the time and place of the sitting of the board of equalization, which notice was duly published, stating the amount of the total proposed assessment upon each of the parcels of real estate within the district, including that of the plaintiff.

The board of equalization met on November 5, 1930, and remained in session from 10 a. m. until 5 p. m., when it took a recess until November 12, 1930, at 3:45 o'clock p. m., at which time report was made to the board of directors by the chairman of the board of equalization, as follows: ·

"Your board of equalization reports that no complaints were made to the proposed assessments for special benefits in the following water main districts and gas main districts in the city of Omaha and in the county of Douglas, and your board of equalization finds that the proposed assessments of special taxes are in all things correct and that the real estate therein described has been specially benefited to the amount of the proposed assessments against the said respective pieces of real estate as set down in the records of your proceedings on pages 10 to 32 inclusive of your minute book under date of October 22, 1930, to wit: Water main districts Nos. 1304 * *· * all in the city of Omaha and in the county of Douglas, state of Nebraska."

Thereupon the board of directors of the Metropolitan Utilities District passed the following resolution:

"Whereas, it having been and is adjudged, determined and established that the several lots and pieces of real

estate hereinafter referred to have been each specially benefited by the extension of a water main in water main district No. 1304 in the city of Omaha and county of Douglas, to the full amount herein and hereby levied and assessed against each of said lots and pieces of real estate, respectively, therefore, for the purpose of paying the cost of the extension of water main in water main district No. 1304 it is hereby ordered by the board of directors of the Metropolitan Utilities District under and by virtue of the power vested in it in that behalf, that that part of the total cost of said extension of water main in water main district No. 1304 in the sum of $1,213.76 be and the same is hereby levied and assessed, according to special benefits by reason of said water main extension, upon the following lots and pieces of real estate in the city of Omaha and county of Douglas, respectively, to wit:"

Then follows description of the east 132 feet of plaintiff's land and the amounts assessed thereon. The resolution then proceeds with a recital that the special taxes had been equalized and the real estate described found to be specially benefited to the amount of the proposed assessment, and provides for their payment in ten instalments, etc.

The copies of these proceedings received in evidence do not purport to include descriptions of any other lots or tracts than those of the plaintiff, the omission thereof being indicated by asterisks; but the plat hereinbefore referred to purports to describe all of the property assessed. It also bears the following notation: "Actual cost of 8" 1359.22; actual cost of 6" 1245.34; total assessment 1213.76; rate per front foot .78958914; total frontage 1577.2." The proceedings are in substantial conformity with the law governing special assessments in metropolitan cities.

The plaintiff did not appear before the board of equalization nor take any proceedings in error from their conclusions, as she might have done (*McCague Investment Co. v. Metropolitan Water District*, 101 Neb. 820), but founds

her case upon the proposition that the special assessments resulting from the proceedings are void. The case therefore presents a collateral attack upon them. The numerous attacks upon the validity of the proceedings are not separately stated nor paragraphed in appellant's brief, so we will take up and consider them, as nearly as may be, in the order in which they are argued.

■ That the Metropolitan Utilities District of Omaha is not a legally organized corporation. This is not seriously urged and will not be further considered.

■ That the boundaries of the water main district are not described with sufficient certainty. This point is not counted upon in plaintiff's petition, and therefore need not be examined to any extent. If we understand counsel's argument, it is based upon the fact that the various resolutions, copies of which were received in evidence, included only the description of plaintiff's lands. We think the point not well taken, especially as the plat upon which those proceedings were based and to which they referred contains a definite description of the real estate included within the district and its boundaries.

■ That there is nothing in the record to show the cost of laying a 6-inch main. In this we think counsel is in error. The plat hereinbefore referred to was stipulated as correct, and admitted in evidence without objection. It contained the notation above mentioned that the actual cost of a 6-inch main was $1,245.34; the actual cost of an 8-inch main (which was laid) was stated as $1,359.22; while December 24 thereafter, the estimated cost of the main was fixed at $1,460. While the evidence is not very satisfactory, we think it warrants a finding that the cost of a 6-inch main is sufficiently shown and, the assessment being for a less amount, the statute was not infringed. In this connection the further point is made that there is no provision in the statute for payment of the excess cost of a 6-inch main beyond special benefits, but we think plaintiff is not entitled to raise this question and we do not decide it.

■ That the assessment is made according to the foot front rule and there is no finding in the record that the special benefits are equal and uniform and is therefore void. Plaintiff cites three cases from this state on this proposition, *Morse v. City of Omaha,* 67 Neb. 426, *John v. Connell,* 64 Neb. 233, and *Hurd v. Sanitary Sewer District,* 109 Neb. 384, which hold that such finding is necessary. However, in the *Morse* case it was held that the finding that the benefits are equal and uniform need not be in the exact language of the statute and a finding that each parcel of land is specially benefited to an amount equal to the tax assessed against it is sufficient. In the *John* case it was distinctly held: "It must affirmatively appear from the record that the council, sitting as a board of equalization, found that the benefits were equal and uniform;" but this was in effect overruled on the third hearing of that case (71 Neb. 10) holding that "A finding by the board of equalization that all real estate on which special assessments are levied, 'are specially benefited and shall be assessed for the full cost of construction of such sewers according to the feet frontage,' is not so fatally defective as to the requirements of a finding of uniformity as to invalidate the special assessment and render it subject to collateral attack." And it was stated in the opinion at page 15: "The finding that the property is specially benefited and should be assessed for the full cost of construction according to feet frontage, is tantamount to a statement that the benefits are equal and uniform."

In the *Hurd* case the opinion was written by the present writer, and while the point is not mentioned in the syllabus, in view of the fact that a new assessment would follow the one under attack, it was suggested: "While it appears that the city attempted to make assessments according to benefits, there was no finding by the board that the several lots were benefited to the extent of the assessment. This is necessary. *Morse v. City of Omaha,* 67 Neb. 426. And if the foot frontage rule is adopted

there should be a finding that the benefits are equal and uniform." We are not disposed to recede from this statement of the law, but it will be noted that in that case there was no finding either that the benefits equalled the assessment or that they were equal and uniform. Furthermore, it was held in *Morse v. City of Omaha, supra,* that, though there is no finding that the special benefits are equal and uniform, "a taxpayer with notice, dissatisfied with the rule per foot frontage adopted, should cause such action to be reviewed, and on failure so to do he will not, in a proceeding to enjoin the collection of such tax, be heard to say that the tax is void." In view of our holdings in the above cases, we think the findings in the present case are sufficient on this point, and it will not be necessary to discuss cases cited from other states.

■ That the statute is unconstitutional because it authorizes levy of the full cost of the improvement according to the foot front rule without regard to special benefits. This, if true, would be fatal to the law and the assessment; but it will be remembered, as above quoted, that section 5 of the act provides that prior to the levy of said special tax the same shall be equalized in the manner as provided by law for the equalization of special assessments levied in the metropolitan city within such utilities district. The entire act must be considered, and section 5 is just as applicable to section 8 as if their positions in the act were reversed. By this provision those portions of the act governing metropolitan cities are incorporated by reference into the act under discussion. *Nunes v. Wellisch,* 75 Ky. 363; *In re City of New York,* 95 App. Div. 552; *Clay v. Pennoyer Creek Improvement Co.,* 34 Mich. 204; *Sheridan County v. Hand,* 114 Neb. 813. It will therefore be necessary to examine the provisions so incorporated which are found in sections 14-536 and 14-538, Comp. St. 1929:

"14-536. All special assessments to cover the cost of any public improvements herein authorized shall be levied and assessed on all lots, parts of lots, lands and real estate

specially benefited by such improvement, or within the district created for the purpose of making such improvement, to the extent of the benefits to such lots, parts of lots, lands and real estate by reason of such improvements, such benefits to be determined by the council sitting as a board of equalization. Where they shall find such benefits to be equal and uniform, such assessment may be according to the foot frontage, and may be prorated and scaled back from the line of such improvements according to such rules as the board of equalization shall consider fair and equitable."

"14-538. In all cases, where special assessments are authorized by this act, except as otherwise provided, before any special tax or assessment be levied, it shall be the duty of the council to sit as a board of equalization for no less than one day commencing on the first Wednesday of each month. Such sessions shall be held between the hours of ten o'clock a. m. and five o'clock p. m. in the city council chamber, for one or more consecutive days. It shall be the duty of the city clerk to publish a notice of such sitting for at least three days, the first publication to be at least seven days prior to the first session of the board." Incorporating the provisions for equalization into the act in question, it seems clear that the legislature did not authorize the levy of the special assessment beyond the special benefits to the property charged. The last section above quoted would seem to dispose of the further contention of plaintiff that no provision was made for the equalization of the assessments and no notice provided of the sitting of the board, but we discuss them briefly.

■ The contention of the plaintiff on these two points seems to be based upon the proposition that the jurisdiction of the board of equalization is confined to property within the city limits, whereas the property of plaintiff lies adjoining, but outside. We cannot give our assent to this proposition for the following reasons: When the legislature authorized the utilities district to extend their

mains beyond the city limits into adjacent territory, the legal effect was to enlarge the utilities district to cover the real estate served by such extension, and the statutes treat the several cities, villages and districts as separate and distinct entities. When they refer to utilities districts they must have intended such districts, not only as then existing, but as extended by the permissive provisions of the act, and made applicable to such extended districts, as such, the provisions of the charter or statute governing the principal city within the metropolitan utilities district regarding the equalization of special assessments in that district. These provisions restricted the power of levying special assessments to the special benefits accruing to the property subjected thereto, and the power of the utilities district is likewise restricted.

But it is contended that the notice of the sitting of the board of equalization published in the official city paper is not a sufficient notice to property owners outside of the city to meet the requirements of due process of law. What we have said as to the legal effect of the statutes authorizing the extension of water mains beyond the city limits would seem a sufficient answer to this proposition. If the utilities district is composed of the real estate within the enlarged limits, it would seem to be sufficient to provide for publication of the notice in any paper published within such limits. It was within the province of the legislature to determine that publication in a newspaper of the principal city located within the district would be the most reasonable means of affording notice to property owners within the utilities district.

It is further contended that no power is granted to levy a special tax for the extension of water mains unless such extension is into another county. We cannot agree. Section 8 above quoted authorizes the extension of the utilities district beyond the corporate limits of the city so as to include "adjacent territory, precincts, towns, or villages, even though the same be in an adjoining county or counties, and may create such water main, gas main,

and other utility service districts within such adjacent precincts, cities, towns, and villages, even though the same be located in an adjoining county or counties." Counsel's argument seems to be that, because of the omission of the word "territory" before the word "precincts" in the latter part of the above quotation, the district is given no power to create water main districts in adjacent territory unless the same be in some county other than that in which the utilities district is located. We think, however, that the reasonable construction of the language, considering the omission of the word "territory," is that authority was given the utilities district to erect separate water main districts in precincts, etc., but that, where the real estate to be served by the extension was merely in adjacent territory, the same could be included in a district also containing property within the city, which is the case here.

■ It is further insisted that because plaintiff's lands are not subdivided and are farm lands they are not subject to special assessment to pay the cost of a water main. As has been heretofore stated, the land on the east and west of plaintiff's property is all platted and, with the exception of ten acres intervening, on the north there is a cemetery of about thirty acres extent; furthermore, the plaintiff's land adjoins the city limits on the west, and it seems fairly inferable from its location that it is susceptible of other uses than farm land, dependent upon the wishes of the owner. The mere fact that it is presently used as a farm does not render it exempt from assessment. The evidence does not show that the land cannot receive any special benefits from the improvement, as in *Hanscom v. City of Omaha,* 11 Neb. 37, and the finding of the board is at least *prima facie* correct; but we think this question is one which should have been submitted to the board of equalization, and it is not now open to the plaintiff to raise it.

Finding valid the special assessments in question, the judgment of district court is AFFIRMED.