## ATLEE HART V. H. C. BEARDSLEY ET AL.

FILED JANUARY 21, 1903.  No. 12,835.

1. **Aim and Object of the Appraisement Law.** The sole aim and object of the appraisement law is to prevent a sacrifice of the debtor's property by providing that it shall not be sold upon judicial process for less than two-thirds of the value of the debtor's interest as fixed by the appraisers.

2. **Jurisdiction of Appraisers: VALUE AND EXTENT OF DEBTOR'S INTEREST: CHARACTER OF TITLE.** The business of the appraisers is to fix the value of the debtor's interest, not to determine the extent of the interest, or character of the title, that will be offered for sale and transferred to the purchaser by the order of confirmation.

3. **Real Interest of Debtor Is Sold.** At an execution sale of lands and tenements the thing offered for sale and the thing actually sold and transferred to the purchaser is the real interest of the debtor in the property, not merely his interest as fixed and determined by the appraisers.

4. **Foreclosure Sale—What It Transfers to Purchaser.** A foreclosure sale of lands and tenements, unless the decree otherwise provides, transfers to the purchaser every right and interest in the property of all the parties to the action.

Syllabus by court; catch-words by editor.

5. Appraisers: JUNIOR LIEN: GROSS VALUE: DEDUCTION. Where appraisers of land about to be sold in execution of a decree of foreclosure deduct a junior lien in favor of one of the parties to the action from the gross value of the property, the error will be without prejudice unless it result in depriving the mortgagor of the specific right secured to him by the appraisement law.

6. Wrongful Deduction of Junior Lien: TITLE VESTED IN PURCHASER. And, notwithstanding such wrongful deduction, the foreclosure sale will, if confirmed, divest the junior lien and vest in the purchaser every right and interest in the property of all the parties to the action.

7. Decree of Foreclosure: JUNIOR LIEN: SENIOR LIEN: JURISDICTION OF APPRAISERS. Where a decree of foreclosure determines that a lien in favor of one of the parties to the action is a junior lien the appraisers have no jurisdiction or authority to adjudge it to be a senior lien.

ERROR from the district court for Dakota county. Action to foreclose a real estate mortgage. Tried below before GRAVES, J. Judgment of dismissal on the pleadings. *Affirmed.*

*Robert E. Evans,* for plaintiff in error.

*Wilbur Owen* and *Mell C. Beck, contra.*

SULLIVAN, C. J.

This was an action by Atlee Hart against H. C. Beardsley, Sarah J. Beardsley and George B. Owen, trustee, to foreclose a real estate mortgage. No evidence was taken at the trial, but upon the facts actually or constructively admitted by the plaintiff in his pleadings the court found in favor of defendants and gave judgment dismissing the petition. The case was submitted in this court on an agreed printed abstract which is in substance as follows:

December 31, 1894, H. C. Beardsley and wife executed to Geo. B. Owen, trustee, a mortgage for $1,800 on land in Dakota county, Nebraska, which mortgage recited that it was a first mortgage. This mortgage was drawn by the plaintiff in this case, Atlee Hart, the written portion being

in his handwriting, and was recorded on January 8, 1895. December 29, 1894, Beardsley and wife executed another mortgage for $500 to the plaintiff herein, Atlee Hart, which is the mortgage here in question. This mortgage was also drawn by Hart, is in his handwriting, and recites that it is "subject and second to a mortgage hereinafter to be given for eighteen hundred dollars," and it is alleged in defendants' answer, and not denied by plaintiff, that this clause referred and was intended to refer to the $1,800 mortgage given to Geo. B. Owen, trustee, and the plaintiff accepted his mortgage with that understanding; and after the $1,800 mortgage had been delivered to Owen, this second mortgage was also filed for record on January 8, 1895, but prior to the other mortgage. October 6, 1899, Owen filed a petition in the district court of Dakota county seeking a foreclosure of his mortgage for $1,800, making Hart a party defendant and alleging that he, the said Hart, had or claimed to have some lien upon or interest in the mortgaged premises, and that such lien or interest was junior and inferior to the lien of the plaintiff's mortgage. The prayer of the petition was that the $1,800 mortgage be adjudged to be a first lien, and for a decree of foreclosure. A summons was issued and served on Hart, who appeared, but failing to answer, was defaulted. Thereupon a decree was rendered, which recited that the mortgage of George B. Owen, trustee, was a first lien upon the premises here in question and "paramount and superior to any right, title, lien or interest in and to or against the same of any of the defendants" in said action; and also adjudged that in case the defendants in said cause should fail for twenty days from the entry of said decree to pay or cause to be paid to the said Owen the sum of $2,658, found to be due upon his mortgage, with interest and costs, the defendants, and all of them, should be foreclosed of all equity of redemption or other interest in the mortgaged premises, that said premises should be sold, and that an order of sale should be be issued to the sheriff commanding him to sell the premises and bring the proceeds into court. An order

of sale was issued by the clerk November 19, 1900, and the premises were valued at the sum of $3,200. The register of deeds in making his return to the sheriff certified the Hart mortgage as a prior lien, and the appraisers in making their appraisement deducted it, together with a tax lien amounting to $246, from the gross valuation, and appraised the "interest of the defendants" in the action at $2,454. Neither party sought to have the appraisement set aside, and the plaintiff, Owen, as trustee, bid in the mortgaged premises for $2,800, with full knowledge of the deduction of the Hart mortgage, but in reliance upon the decree as fixing the rights of the parties, and without making any deduction for, or taking into account, the Hart mortgage. The sale was confirmed by the court without objection by either party, and a deed executed to Owen, who was given credit upon his bid for the amount due upon his mortgage. Hart neither claimed nor received any part of the proceeds of the sale.

From these facts it clearly appears: (1) that the Hart mortgage was in truth a junior lien; and (2) that Owen bought the property without intending to assume the lien, and in the belief that it would be divested by the sale. It is contended by counsel for Hart that the $500 mortgage having been deducted by the appraisers from the gross value of the land, it is still, notwithstanding the sale, a valid and enforceable lien. It may aid us in determining the question thus raised to inquire what is the meaning of a judicial sale. What does the court undertake to sell and what does the purchaser expect and intend to buy? If the sale is conducted on the theory that the real interest of the debtor, and of all the parties to the action, is the thing offered for sale, then the purchaser gets that interest, whatever it may be. But if the meaning of the transaction is that the thing offered for sale is the interest of the debtor as fixed and determined by the appraisers, then it may, with reason, be asserted that the deducted lien represents purchase money which the vendee can not rightfully refuse to pay. At the common law the thing offered at an execu-

tion sale was the real interest of the debtor, and at a fore-
closure sale the thing offered and sold, unless the decree
otherwise provided, was every right, title and interest of
all the parties to the action.    Freeman, Executions, 301,
335; Jones, Mortgages, sec. 1654; Wiltse, Mortgage Fore-
closures, sec. 577; *Tallman v. Ely,* 6 Wis., *244; *Ames v.
Storer,* 74 N. W. Rep. [Wis.], 101; *Young v. Brand,* 15
Nebr., 601; 17 Am. & Eng. Ency. Law [2d ed.], 1010.    In
this state the rule of the common law upon this subject has
not been changed.    By section 499 of the Code of Civil
Procedure it is provided that the sheriff or other officer
selling realty on execution shall make to the purchaser "as
good and sufficient a deed of conveyance of lands and tene-
ments sold as the person or persons against whom such
writ or writs of execution were issued could have made of
the same, at the time they became liable to the judgment,
or at any time thereafter."    And in the next section it is
further declared that the sheriff's deed "shall vest in the
purchaser as good and as perfect an estate in the premises
therein mentioned as was vested in the party, at or after
the time when such lands and tenements became liable to
the satisfaction of the judgment."    According to section
853 of the Code of Civil Procedure the effect of a deed
given by a sheriff or other officer conducting a foreclosure
sale is to "vest in the purchaser the same estate that would
have vested in the mortgagee if the equity of redemption
had been foreclosed"; and in said section it is further de-
clared that "such deeds shall be as valid as if executed by
the mortgagor and mortgagee, and shall be an entire bar
against each of them, and all parties to the suit in which
the decree for such sale was made."    These statutory pro-
visions have been in no manner modified by the appraise-
ment law, which was designed to prevent a sacrifice of the
debtor's property by providing that it should not be sold
upon judicial process for less than two-thirds of the value
of his interest as fixed by the appraisers.    *Watson v.
Tromble,* 33 Nebr., 450.    An execution sale still vests in
the purchaser the actual interest of the execution defend-

ant in the property sold; and a foreclosure sale, in the absence of any reservation in the decree, still transfers to the purchaser every right, title and interest of all the parties to the suit.

It has been uniformly held by this court that a wrongful deduction by appraisers is not prejudicially erroneous if the land sold for two-thirds of the real value of the debtor's interest. *Drew v. Kirkham*, 8 Nebr., 477; *La Selle v. Nicholls*, 56 Nebr., 458; *Bernheimer v. Hamer*, 59 Nebr., 733; *Peck v. Starks*, 64 Nebr., 341. These decisions go upon the assumption that the thing sold is the real interest of the debtor, and that it will bring whatever it is worth, regardless of the appraisers' estimate of its value. This is made plain by a simple illustration: A piece of land is valued by appraisers at $1,200. A judgment amounting to $800, void for want of jurisdiction, is deducted as a prior lien. The land is then sold for $800. According to the decisions just cited, the debtor is not injured by the appraisers' mistake, because it did not result in a violation of any right secured to him by the appraisement law. If the thing sold was merely the debtor's interest as fixed by the appraisers, the error would, of course, be very prejudicial, for it is evident that if the land would bring $800 when sold subject to an $800 lien it would, but for the lien, bring $1,600.

In the present case Owen, relying on the law and the decree of the court, made his bid and completed his purchase. He did not understand that the land was offered subject to the lien of the Hart mortgage. He assumed that it was the business of the appraisers to fix the value of the debtor's interest, and that it was not their business to determine the extent of the interest or character of the title which would be offered for sale and which would pass to the purchaser by the order of confirmation. He supposed the Hart mortgage would be divested by the sale and that the error made by the appraisers would be harmless if it did not deprive the mortgagor of the specific right secured to him by the appraisement law. To hold, under these cir-

Hart v. Beardsley.

cumstances, that the amount due upon the Hart mortgage is purchase money in the hands of Owen, impressed with a trust in favor of Hart, would be to ignore an obvious and conceded truth and to base our decision upon a palpable fiction.  The parties to an action are, of course, conclusively bound by the adjudications of the court, but in this case there was nothing adjudged in favor of Hart and against Owen.  There was no issue between them which the appraisers had jurisdiction or authority to decide.  The function of the appraisers was to fix the value of Beardsley's interest in the mortgaged property, and they had no other duty, power or function.

The reasoning by which it is sought to prove that the mortgaged premises were sold subject to the Hart mortgage is altogether artificial and, as it seems to us, manifestly unsound.  But it is said that some decisions of this court, such as *Koch v. Losch,* 31 Nebr., 625, and *Nye v. Fahrenholz,* 49 Nebr., 276, can not be reconciled with a decision affirming the judgment in favor of Owen.  Whether this be so we will not now stop to inquire, but if it is true that the cases referred to by counsel are in conflict with the conclusion reached in this case, they are unsound and wholly indefensible.

The judgment is                         AFFIRMED.

HOLCOMB, J., concurring specially.

I agree to the conclusion reached in the foregoing opinion and concur in a judgment of affirmance.  I dissent, however, from the views expressed in the opinion which are in conflict with the principles deducible from the following authorities, which, in my opinion, must now be held to be the settled law of this state: *Kruger v. Adams & French Harvester Co.,* 9 Nebr., 526; *Skinner v. Reynick,* 10 Nebr., 323; *Bond v. Dolby,* 17 Nebr., 491; *Koch v. Losch,* 31 Nebr., 625; *Nye v. Fahrenholz,* 49 Nebr., 276; *Farmers' Loan & Trust Co. v. Schwenk,* 54 Nebr., 657; *Arlington Mill & Elevator Co. v. Yates,* 57 Nebr., 286; *Goos v. Goos,* 57 Nebr., 294; *Battelle v. McIntosh,* 62 Nebr., 647; *Curtis v. Osborne,* 63 Nebr., 837.

SEDGWICK, J., concurring.

I think that the many former decisions of this court, so far as they bear upon the question involved in this case, can be justified, if at all, only upon the principle that the purchaser of real estate incumbered by a mortgage is estopped to deny the validity of the prior mortgage if he deducts the amount of the mortgage from the purchase price, and agrees to pay the same. Unless there is an agreement, express or implied, to pay the prior lien, he is not estopped to deny its validity. The fact that he purchased the property at a foreclosure sale, under an appraisement in which the prior lien is deducted from the true value of the land in ascertaining the value of the defendant's interest, is to be regarded as evidence that he assumed the prior mortgage, and agreed to pay the same as part of the purchase price. The record may be in such condition that, together with such appraisement, it will, of itself, be sufficient evidence that the purchaser assumed and agreed to pay the prior incumbrance.

The proposition of law stated in the sixth paragraph of the syllabus is not inconsistent with this view. It is, by its terms, restricted to junior liens held by parties to the action whose rights have been adjudicated therein. If a purchaser at a judicial sale has purchased the property for a small fraction of its real value, and the appraisement under which he purchases shows that a prior lien has been deducted from the real value of the land in fixing the defendant's interest, the presumption will be that he assumed and agreed to pay the prior lien, there being nothing in the record of the proceedings to overcome this presumption. But when the decree itself shows that the sale was not made subject to a prior lien, but that a supposed lien, erroneously deducted by the appraisers, was in fact subject to the lien under which the sale took place, then no such presumption exists, but rather the record is conclusive that the purchaser did not assume and agree to pay the prior lien.