FRANCES A. M. EDDY ET AL., APPELLEES, V. CITY OF OMAHA ET AL., APPELLANTS.*

FILED OCTOBER 20, 1904. No. 13,572.

1. **Judicial Sale**: APPRAISAL: ESTOPPEL. Where the amount of an apparent tax lien not included in a decree has been deducted from the appraised value of the debtor's interest by the appraisers, and the purchaser, assuming that the taxes were valid, takes advantage of the deduction thereof, he will be presumed to have agreed with the judgment debtor that he will pay the taxes so deducted, and will not be heard to deny their validity in an equitable proceeding seeking to enjoin their collection.

---

* Rehearing opinions. See *post*, pp. 559, 561.

2. **Deed:** RECITALS: ESTOPPEL. Where a purchaser of lands which are subject to an apparent lien for special assessments procures the title to the premises by a conveyance which recites that they are subject to the specific lien of the special assessments, which with interest thereon the purchaser assumes and agrees to pay as a part of the consideration thereof, he will not be permitted in a court of equity to set aside the tax as invalid.

3. **Paving:** NOTICE. The provisions of a statute and ordinance requiring 30 days' notice to be given property owners to designate the material which they desire used in repaving are mandatory and jurisdictional.

4. **Pleading:** WAIVER: ISSUES. Where the charter and the ordinances of a city require notice to be given to property owners for 30 days to designate material for paving, and notice is not given for the specified time, and the city relies upon facts tending to show a waiver of the failure to give notice, it should plead the waiver in its answer, and no waiver having been pleaded the facts are outside of the issues in the case.

APPEAL from the district court for Douglas county: IRVING F. BAXTER, JUDGE. *Judgment modified.*

*C. C. Wright, W. H. Herdman* and *A. G. Ellick,* for appellants. .

*H. W. Pennock* and *F. J. Griffin, contra.*

LETTON, C.

Separate actions were begun in the district court for Douglas county by Frances A. M. Eddy and others, and Mattie D. Valentine and others, against the city of Omaha and others, for the purpose of obtaining injunctions against the collection of certain special assessments in repaving districts No. 48 and No. 67, and special improvement district No. 597, in the city of Omaha. These actions were afterwards consolidated and tried together. A decree was rendered in favor of all the plaintiffs, except John H. Evans and Lizzie B. Evans, against the defendants, canceling the repaving and curbing assessments complained of, enjoining their collection and removing the cloud upon the title of the real estate belonging to the several plain-

tiffs caused by the assessments. From this decree the plaintiffs John H. Evans and Lizzie P. Evans have appealed, and so also has the city of Omaha, defendant.

Among other things the plaintiffs allege in their petitions that the petitions to the city council for the repaving were not signed by a majority of the owners of the foot frontage on the street to be improved; that the city failed to give 30 days' notice to property owners to select the material to be used in repaving; that there were not sufficient funds in the city treasury of the city of Omaha available to pay for the repaving of the intersections of streets and alleys at the time the improvement was ordered; that the notice of the time and place of the meeting of the board of equalization for the purpose of equalizing the repaving assessment was not given or published according to law; and allege a number of other defects in the proceedings which it is not necessary to notice. The city answered, denying the invalidity of the proceedings and setting up estoppels as to some of the plaintiffs. The court found in its decree that the assessment was null and void for the four reasons alleged in the petition and stated above. In the briefs of appellant, the city of Omaha, it is conceded that the assessment in controversy was null and void, for the reason that proper and legal notice was never given of the meeting of the board of equalization which purported to equalize the assessments. For this reason it will be unnecessary for us to examine the evidence in the case, except with reference to the rights of the appellants John H. Evans and Lizzie P. Evans, whom the court found were estopped from contesting the validity of the tax; with reference to those of the plaintiff Harriet G. Pritchett, whom the appellant city of Omaha insists appeared before the board of equalization in pursuance to the defective notice, and thereby waived all defects in the form and service of notice of the sitting of the board of equalization; and with reference to those of the plaintiff, the Omaha Loan & Trust Company Savings Bank, which the appellant city of Omaha contends is estopped to question

the validity of the special assessments, by reason of the presumption that it assumed and agreed to pay the same, having received the benefit of the same by a deduction of the amount from the appraised value of the property affected at the time it purchased it at foreclosure sale.

These concessions narrow the field of inquiry. We will first consider the appeal of John H. Evans and Lizzie P. Evans. The evidence shows that they jointly procured title to lot 11, in block 4, in Summit Reserve addition to the city of Omaha, by a deed of conveyance which contained the following provision: "Subject to the state and county taxes for the year 1900, and to eight instalments for the repaving of Farnam street in improvement district No. 597, which, with interest thereon, the purchasers assume and agree to pay as a part of the consideration hereof." By these provisions the grantees bound themselves to pay the specific special assessments which were described in the deed and which are in controversy in this case.

In *Kruger v. Adams & French Harvester Co.*, 9 Neb. 526, as in the case at bar, the debt which the plaintiff assumed and agreed to pay did not constitute an actual lien upon the premises. While it was an apparent lien, still it possessed no legal force or validity. The court held, however, that if Kruger agreed with Wells, in consideration of the conveyance, to pay off the judgment of the harvester company, he could not be said to have done equity in the premises, when he came into court to enjoin the collection of the judgment out of the land, without first paying off the judgment according to his agreement. The doctrine in this case is just and equitable, it has become the settled law of this state, and it is now too late to attempt to change it. *Skinner v. Reynick*, 10 Neb. 323; *Bond v. Dolby*, 17 Neb. 491; *Koch v. Losch*, 31 Neb. 625; *Nye & Schneider Co. v. Fahrenholz*, 49 Neb. 276; *Farmers Loan & Trust Co. v. Schwenk*, 54 Neb. 657; *Arlington Mill & Elevator Co. v. Yates*, 57 Neb. 286; *Goos v. Goos*, 57 Neb. 294; *Battelle v. McIntosh*, 62 Neb. 647; *Curtis v. Osborne*

& Co., 63 Neb. 837; Omaha Savings Bank v. City of Omaha, 4 Neb. (Unof.) 563; Equitable Trust Co. v. City of Omaha, 69 Neb. 342; Hart v. Beardsley, 67 Neb. 145.

There could hardly be a plainer application of this principle than in the case at bar. The purchaser obtained the benefit of the deduction from the consideration money of the amount of the eight instalments of special assessments, by reason of his agreement to pay the same. He deprived his vendor of this money upon the promise that he would pay it to the city of Omaha upon this specific special assessment. It would be manifestly inequitable to allow him to retain the money which he promised his grantors that he would pay, and at the same time allow him to come into a court of equity and ask it to relieve him from his agreement. As is said in Equitable Trust Co. v. City of Omaha, 69 Neb. 342: "If appellant does not propose to pay the taxes in question, what does he propose to do with the money he has withheld from the owner of the land?" The taxes were presumptively valid, and the owner of the property was at least under moral obligations to pay them. The facts in the cases cited by the appellants in their brief are clearly distinguishable from those in which the principle herein stated is laid down. By the agreement to pay the specific assessments, and by obtaining the benefit of the deduction of the amount of the same as a part of the consideration for the property, the appellees are estopped to maintain an action to set aside the apparent lien of these special assessments.

Omaha Loan & Trust Company Savings Bank:

As to the question whether the Omaha Loan & Trust Company Savings Bank is estopped to deny the validity of the tax, it appears that the property in controversy was purchased by the appellee savings bank at foreclosure sale; that upon the appraisal of the property for sale under the decree, the appraisers fixed the gross value of the same at the sum of $8,800; that certificates of liens were obtained and liens were deducted from the gross appraisal

as follows: Regular city taxes, $375.23; special assessments for paving in paving district No. 48, $170.23; special assessments for curbing and guttering in said district No. 48, $32.28; regular county taxes, $118.02. Total liens, $695.76, leaving the net appraisal, $8,104.24. It appears therefore that the special assessments in controversy, amounting to $202.51, were deducted from the amount of the appraisement. The property was sold to the plaintiff upon its bid of $5,425. The theory upon which the savings bank, the appellee, urges that no estoppel has arisen against its right to contest the validity of the special assessments is that, since its bid was only $441 less than two-thirds of the gross appraised value, and since it has paid the regular city and county taxes, amounting in all to $493.25, it derived no benefit from the deduction of the special assessments, and therefore comes into court with clean hands, having done equity in the premises by paying valid taxes to a larger amount than the advantage it gained by the deduction of both special assessments and regular taxes. This contention is based upon the idea that the only advantage the appellee gained was the difference between two-thirds of the gross appraised value and the amount of its bid; but the amount of the gross appraised value has no relation to the inquiry, and cannot be taken into consideration in determining whether or not the appellee has received the benefit of the deduction. The question is, not what the appellee might bid if no liens had been deducted, but what was actually done. When, in foreclosure sales, liens are deducted from the appraisal, a purchaser who buys under such appraisal will be presumed to have assumed and agreed to pay the liens, unless something to the contrary appears in the record. There is nothing in this case to set aside the presumption. A full discussion of the question of whether an estoppel arises under such circumstances is to be found in *Omaha Savings Bank v. City of Omaha, supra,* and *Equitable Trust Co. v. City of Omaha, supra,* also in the concurring opinion of SEDGWICK, J., in *Hart v. Beardsley, supra.* We

are of the opinion that the district court erred in finding that the appellee was not estopped to contest the validity of the special assessments, and the decree should be modified accordingly.

Harriet L. Pritchett:

As to Harriet L. Pritchett, appellee, it appears that although the notice of the meeting of the city council as a board of equalization was defective, yet she filed a protest before the board as to the repaving of Farnam street, and, so far as that street is concerned, such appearance waived the defect in the notice as to her. It is therefore necessary to consider whether or not the proceedings were otherwise regular as to her. The charter of the city provides, sec. 110: "It shall be the duty of the mayor and council to give the property owners in said district 30 days from the approval and publication of the ordinance declaring such improvement necessary, to designate by petition the material to be used in the paving of the streets." The ordinance which ordered street improvement district No. 597 repaved, which district includes the Farnam street property of appellee Pritchett, required the board of public works "to publish a notice to property owners within said street improvement district No. 597 to select the material for the pavement within their district, and to notify the council of such selection within 30 days of the publication of such notice; the hour and the day of the expiration of said 30 days to be made in said publication." In accordance with the ordinance the board of public works published the following notice: "Notice is hereby given that 30 days will be allowed you from the first day of publication of said ordinance No. 4245 within which to designate by petition to the honorable mayor and city council of the city of Omaha the material to be used in repaving said Farnam street. Said petition must be filed with the city clerk prior to 12 o'clock, noon, August 31, 1897, at which time the said 30 days will have expired." This notice was first published on August 2, 1897, and by

its terms the 30 days were to expire at noon on August 31, 1897. It is apparent therefore that the 30 days' notice by publication was not given as required by the ordinance. The provisions allowing the owners of property abutting upon any contemplated street improvement the privilege of designating the material by which the improvement is to be made are eminently just and fair. When the individual property owner is compelled to be charged with the burden of constructing street improvements for the benefit of the general public, as well as incidentally for his own benefit, it is proper and right that he should have a voice in the determination of the material to be used. It is he who bears the burden. Out of his pocket comes the money to pay for the material which is to be used. Provisions in a city charter which make it the duty of the mayor and council to give the property owners in an improvement district 30 days from the approval of the ordinance declaring such improvement necessary to designate the material to be used, and provisions in an ordinance based upon said provisions of the charter which require the publication of said notice for 30 days are mandatory, and, unless waived in some manner by the property owner to be affected, the lack of such notice will prevent the council from acquiring jurisdiction to levy a tax to pay for such improvement. *Morse v. City of Omaha,* 67 Neb. 426. In the instant case it appears that, before the expiration of the time fixed in the notice, a petition signed by the owners of a majority of the foot frontage of the property abutting on Farnam street, and designating certain material as the material to be used, was filed with the city clerk, and it is contended by the city that this waived the defect in the publication of the notice. This alleged waiver has not been pleaded in the answer. If the city relies upon the fact that the failure to give notice was waived by this action, it should have pleaded the facts in its answer. Not having done so, it cannot take advantage of the alleged waiver in its proofs. No such issue was tendered in the case. The city relied upon the sufficiency of the notice; it

was fatally defective, and proof of circumstances tending to show a waiver by some of the property owners was outside of the issues in the case and cannot be considered. The plea is of the nature of confession and avoidance, is new matter, and must be pleaded in order to be considered by the court. *Lowe v. Prospect Hill Cemetery Ass'n,* 58 Neb. 94; *Omaha Fire Ins. Co. v. Johansen,* 59 Neb. 349. We are of the opinion that by the failure to give notice to the property owners to designate material for the length of time prescribed, the council did not acquire jurisdiction to levy the special assessment for paving against the property of Harriet L. Pritchett within said district, and that therefore the decree of the district court with reference to this appellee is correct and should be affirmed.

It appears that the curbing and guttering in paving districts numbered 48 and 67 were ordered after the streets in said districts had been ordered paved. As the law stood at that time, the city council had the power to order curbing and guttering done upon streets which had been ordered paved, without any petition of the property owners being presented for that purpose. No limitation existed upon the power of the city authorities to charge the expense of such work upon the property abutting upon the improvement. For a discussion of the law as it then stood see *Orr v. City of Omaha,* 2 Neb. (Unof.) 771; *City of Omaha v. Gsantner,* 4 Neb. (Unof.) 52. The city therefore had jurisdiction to levy the special taxes for curbing and guttering in paving districts numbered 48 and 67, and such taxes were properly charged upon the abutting property.

A number of other questions are discussed in the able briefs which have been submitted, but since these considerations dispose of the matters in controversy they will not be considered. It was suggested upon the argument that the opinion of the court was desired in regard to a number of these questions, but suffice it to say that the proper function of the court is to decide causes which have actually arisen and not to anticipate other controversies.

We recommend that the cause be remanded to the district court, with directions to modify its decree so as to sustain the validity of the curbing and guttering taxes in paving districts numbered 48 and 67, and to dismiss the action as to the Omaha Loan & Trust Company Savings Bank. As to all other matters the judgment of the district court should be affirmed.

OLDHAM and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the cause is remanded to the district court, with directions to modify its decree so as to sustain the validity of the curbing and guttering taxes in paving districts numbered 48 and 67, and to dismiss the action as to the Omaha Loan & Trust Company Savings Bank. As to all other matters the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

The following opinion on motions for rehearing, leave to amend answers, and motions to modify judgment, was filed January 5, 1905. *Judgment modified:*

LETTON, C.

Appellants have filed motions herein, relating to that part of the decree in favor of Harriet L. Pritchett, for rehearing; for leave to amend answers in this court, and that the case may be remanded with directions to permit them to amend answers below. Since appellants seem to have misunderstood the language of the opinion as to the time of publication of the notice required to be given property owners to designate the material which they desire to be used in repaving, it is perhaps advisable to state that it was not the intention of the court to hold that this notice should be published each day for 30 days. Some of the ambiguity may come from the fact that the writer adopted the language of appellants' brief, wherein it is stated:

"It is apparent that the 30 days' notice was not given by publication as required by the ordinance." The statute and ordinance only require that the notice be published once, notifying the property owners that they must within 30 days of the publication of such notice select the material to be used. The notice in this case was published on August 2, 1897. It stated that the 30 days would expire on August 31, 1897, at noon, which was incorrect. Appellants now argue that, though the notice informed the property owners that the 30 days would expire at noon on August 31, this was a mere irregularity, because the charter, the ordinance and the notice itself informed them that they had 30 days from the publication of the notice within which to designate said material, citing *Armstrong v. Middlestadt*, 22 Neb. 711, and *Scarborough v. Myrick*, 47 Neb. 794. We are of the opinion that this argument is sound. That if, in fact, 30 days had elapsed before the council took any action upon the matter, the recital in the notice that the time would expire several days before the 30 days elapsed would be merely an irregularity, and would not prevent the council from acquiring jurisdiction. The evidence shows however that, on the first day of September, 1897, and before the expiration of 30 days from the publication of the notice, the council acted, and passed an ordinance ordering the improvement of the street by repaving with sheet asphaltum. We held in *Morse v. City of Omaha*, 67 Neb. 426, that the council was without jurisdiction to act until the expiration of the 30 days given property owners to select material, and are still of that opinion. The council, therefore, having acted before the 30 days expired, was without jurisdiction to pass the ordinance and its proceedings were void.

The appellees also filed motions to modify the judgment of this court as to the curbing and guttering assessments in paving districts numbered 48 and 67. The opinion holds correctly that the city council had power to order curbing and guttering done upon the streets which had been ordered paved, without any petition of the property owners being

presented for that purpose.  It is conceded, however, that
no notice of the sitting of the board of equalization held
to equalize such taxes in said districts was ever given.
This being so the assessment was unauthorized, and the
taxes are void.  The decree of the district court, therefore,
as to such taxes should be affirmed.

At the hearing our attention was not called to the fact
that the Omaha Loan & Trust Company Savings Bank
was the owner of other property, the taxes upon which are
in controversy in this suit, besides that situated in dis-
trict numbered 48.  The opinion therefore only relates to
the property of the bank in that district, and the decree
should be modified so as to provide that the action of the
bank be dismissed as to its property described in district
numbered 48, and that otherwise the judgment of the dis-
trict court should be affirmed.

By the Court: For the reasons stated in the foregoing
opinion, the several motions of appellants herein referred to
are overruled, and the judgment heretofore entered in this
case is so modified as to dismiss the action of the Omaha
Loan & Trust Company Savings Bank as to its property
in paving district numbered 48 described in the pleadings.
In all other respects the judgment of the district court is
affirmed.

JUDGMENT MODIFIED.

The following opinion on second motion for rehearing
was filed May 17, 1905.  *Former judgment modified:*

1. **Paving**: NOTICE: JURISDICTION.  Under the statute governing cities
of the metropolitan class (Compiled Statutes, 1897, ch. 12a, sec.
110), property owners of a paving district must be allowed 30
days from the approval and publication of the ordinance declaring
the improvement necessary in which to designate by petition the
material to be used in repaving.  But if a petition signed by the
property owners representing a majority of taxable foot frontage,
designating the material to be used, is filed, the mayor and council
will not lose jurisdiction of the proposed improvement by acting
upon such petition before the 30 days has expired, if no other

39

petition is filed within that time from which it appears that the necessary number of property owners have within the 30 days designated another material.

2. ——: PETITION: SIGNATURE OF CORPORATION. The president of a corporation is the proper party to sign a petition for repaving on behalf of the corporation. His signature will not be held invalid as unauthorized, although the board of directors took no action thereon, if it appears from the evidence that it had for some time prior to such signing been customary for the president to sign such petitions on behalf of the corporation without express authority from the directors, and that the directors knew of this custom and consented thereto, and had reason to believe that the president had signed the petition in question, and made no objection thereto until the improvement had been entered upon, relying upon the validity of such signature to bind the corporation.

3. ——: ——: ——. The board of education of the school district of Omaha may authorize its president to sign such petition in the name of the board, and the signature of the board by its president pursuant to such authority will bind the school district.

4. ——: STREET INTERSECTIONS: ASSESSMENTS: INJUNCTION. It is the duty of the city council to provide available funds with which to pay for street intersections before ordering the improvement. But after the improvement is made and the intersections actually paid for by the city, special assessments against abutting property cannot be enjoined on the ground that this fund with which to pay for the street intersections was not available at the time the improvement was ordered.

SEDGWICK, J.

This motion for rehearing involves principally the conclusion of the former opinions in regard to the assessment against the property of the plaintiff below, Harriet E. Pritchett. In the opinions heretofore filed this assessment is held invalid because 30 days, from the approval and publication of the ordinance declaring such improvement necessary, was not allowed the property owners in which to designate by a petition the material to be used. The statute does not provide for the giving of notice other than the publication of the ordinance declaring the improvement necessary, but the ordinance enacted provided

that the board of public works should publish a notice to property owners to select the material for the pavement, and also provided that the hour and day of the expiration of the 30 days should be stated in the notice. Accordingly notice was published that the 30 days would expire on the 31st day of August, 1897, and this notice was first published on the 2d day of August, so that by its terms the notice did not allow 30 days from the publication thereof in which to make the selection of materials.

A majority of the property owners united in a petition designating the materials to be used, and after this petition was filed, and before 30 days from the publication of the notice had expired, the council acted upon the petition and designated the materials as in the petition requested. It was held in the former opinions that the action of the council was invalid because it did not allow the full 30 days for making the selection. The plaintiff Harriet E. Pritchett did not sign the petition nor take any part in making the selection of materials. It was said in the opinion that this point has been determined in the case of *Morse v. City of Omaha,* 67 Neb. 426, and that it was there held that the mayor and council were without jurisdiction to determine the materials to be used in paving until after the 30 days had expired. We think this was an error, as this precise point was not involved in the case of *Morse v. City of Omaha, supra,* and the question is now a new one before this court. As the plaintiff Pritchett did not unite in the petition selecting the materials, she is not, of course, estopped thereby to now contend that the petition was insufficient or that the council acted prematurely thereon. It is insisted on behalf of the city that, since a majority of the property owners united in selecting the materials, the council might act thereon as soon as the petition was filed, and that it was unnecessary to delay the full period of 30 days for any further action on the part of the property owners in regard to selecting materials. We think that this reasoning is not conclusive to the extent insisted upon by the city.

The statute provides that when the same person signs more than one petition, his signature shall be counted upon the petition last signed. The matter of the selection of materials for the paving is an important one, and a property owner might upon full investigation be dissatisfied with his first conclusion, and, although a majority had petitioned for certain materials, it would appear to be entirely competent for the property owners to change their determination at any time within 30 days. So that if a second petition had been filed within the time limited, in which some of the former petitioners should join, and which was signed by the owners of half of the foot frontage of the district, requesting a different material from the one first designated, the council would no doubt have been required to act upon this second petition. This, however, in this case was not done, and since no other petition was tendered to the council, nor any different determination made by the property owners within the 30 days, it does not appear that this plaintiff was in any way injured by the action of the city council in that regard. The presumption must be, upon this record, that a majority of the property owners desired the council to take the action that it did in determining the materials to be used. Nothing appears in the record to the contrary. We think therefore the conclusion reached in the former opinions upon this point is erroneous.

2. There were other grounds urged in the briefs of the parties for holding this assessment erroneous, which it was said in the former opinions it was not necessary to consider because of the conclusion there reached. Upon the argument before the court in this motion therefore the other grounds were discussed, and it becomes necessary for us to look into the whole record to determine whether there is any other reason for holding this assessment invalid. The questions discussed in the briefs and oral arguments mainly depend upon the sufficiency of the original petition of the property owners for the repaving in question. The statute (Compiled Statutes, 1897, ch. 12a, sec. 110) provides

that: "No repaving shall be ordered except upon the peti-
tion of the owners of a majority of the taxable front feet in
any improvement district." The plaintiffs objected to the
genuineness and validity of many of the signatures to this
petition. The trial court concluded that the petition was
insufficient, and, in doing so, rejected the alleged signatures
of the Omaha Savings Bank, Nebraska National Bank of
Omaha, the Byron Reed Co., and the Coad Real Estate Co.
The names of these corporations were signed to the petition
in each instance by the president of the corporation, and
represented the frontage of 463.2 feet. The contention was
that it did not sufficiently appear that the president sign-
ing for the corporation was sufficiently authorized so to
do. The findings of the court upon this point were:  (a)
"That at the time of signing the petition for repaving for
and in behalf of the corporation, and for a long time prior
thereto, it had been the custom and usage of the president
of the corporation to sign for and on its behalf petitions
for the improvement of streets by paving, or repaving,
without first consulting the board of directors or without
receiving special authority from them so to do.  (b) That
the board of directors of said corporation had knowledge
of such custom and usage on the part of said president,
made no protest and never objected thereto, and at all
times acquiesced in such custom and usage.  (c) That the
board of directors at no time by resolution specially author-
ized the president to sign for and in behalf of the corpora-
tion the petitions for the repaving of Farnam street in
district No. 597, nor was such authority conferred by the
articles of incorporation or by-laws thereof." The con-
clusion of the court was that the signing by the presidents
of the respective corporations was not authorized. In this
we think the court was mistaken. Authorities are cited
by the appellees which discuss the powers of corporations,
but this is not a question of *ultra vires*. The corporation
had power to join in this petition. The question was as to
the manner of exercising that power. The statute provides
that a deed of the corporation may be executed by the

president. There can be no doubt that the president was the proper officer to sign this petition in behalf of the corporation. It was the province of the board of directors to determine whether or not he should so sign it. It is not contended that the action of the president was contrary to the wishes of the board of directors. It appears that no express authority was given him by the board of directors to sign the name of the corporation. If the board of directors knew that it had been the custom of the president to act for the corporation in regard to such petitions, and if the president in pursuance of such custom had acted upon this petition, thereby leading all parties interested to suppose that the corporation had authorized the action, and if the board had acquiesced in such action until the time that this suit was begun, other parties in the meantime having acted upon it supposing that it was the desire of the corporation to be bound upon this petition, there can be no doubt that the board of directors, and the corporation which they represented, would be estopped thereafter to deny the validity of the corporate signature so executed by the president; and if the corporation itself would at the time of the commencement of this action be bound by the signature of the president, there can, of course, be no reason for allowing a third party to object to the sufficiency of the signature upon grounds that would not be available to the corporation itself.

It is said that the evidence is not sufficient to establish the custom or usage relied upon, at least as to some of the corporations named. Special reference is made to the evidence of Mr. Manderson, president of the Omaha Savings Bank, and of Mr. Yates, president of the Nebraska National Bank. Mr. Yates was questioned and testified as follows:

Q. And when you signed this you were president of the bank and one of the directors?

A. I was president and one of the directors.

Q. Did you consult with the other directors in reference to this pavement in signing this petition?

A. According to my recollection I did.

Q. What, if anything, Mr. Yates, did the other directors of the bank say to you in reference to this paving and you signing for the bank?

A. I can't recall exactly what was said, but it was the judgment of the directors that the pavement was desirable.

Q. And they so informed you?

A. And I was so informed.

There is no evidence that the directors ever repudiated the action of the president. They acquiesced therein, and there can be no doubt that at the time this action was begun the corporation was estopped to deny the power of the president to bind the corporation by his signature. It was not necessary to show a general custom or usage in that regard. Without going into a detailed discussion of the evidence as to the other corporations named, it is sufficient to say that it is equally conclusive. It is contended that the views above announced are inconsistent with the rule established in *Morse v. City of Omaha,* 67 Neb. 426. We do not so regard it. In that case it appeared affirmatively that the directors had no knowledge that any action had been taken purporting to authorize the improvement on behalf of the corporation. It did not appear that the circumstances were such that they ought to have taken notice that the president had signed for the corporation. The trial court found that the signature of the corporation by its president was unauthorized, and that finding was not set aside by this court. If 463.2 feet be added to the foot frontage found by the trial court to be properly represented upon the petition, there is a clear majority required by the statute. Unless some of the questioned property which was counted by the trial court as being properly represented upon the petition should be excluded, the petition was sufficient.

3. The property of the school district was included in the findings of the court as properly represented upon the petition. The signature upon the petition was "Board

of Education, by Jonathan Edwards, Prest.," and it represented a frontage of 215.5 feet. The title to the property in question was vested in the school district of Omaha. The board of education has control of the property of the school district. It is authorized to determine the question as to whether the paving would, or would not, be a benefit to the school district, and no other authority is authorized so to do. It appears from the record that, by a resolution of the board of directors, the president of the board was directed to sign the petition in question, and there can be no doubt that the president of the board in signing the petition signed for the school district of Omaha, and intended thereby to bind the property of the district, and that the board which directed him so to do was fully authorized to have so directed. We think there is no doubt that the trial court was right in counting this property as included in the petition.

It is confessed in the brief that the trial court was also right in counting the property of the Imperial Loan and Trust Company which amounted to 57 feet frontage. One-half of the taxable frontage of this improvement was 5,798.55 feet. The amount of the frontage represented upon the petition and not in dispute was 5,108.57 feet; add to this the foot frontage represented by the four corporations above named, the board of education, and Imperial Loan & Trust Company, and the amount represented upon the petition (5,844.27 feet) constituted the foot frontage required by the statute. It is not necessary therefore to examine as to the validity of other signatures discussed in the briefs.

4. It is contended that the city council was without jurisdiction to order the improvement in question because, as it is alleged, there were not sufficient funds available to pay for the street and alley intersections. It appears from the stipulation that the cost of paving the intersections was found to be $5,392.88, and that at the time the improvement was ordered the cash balance in the "paving fund" was $6,016.98. At the general election held three

months before the improvement was ordered, bonds for this purpose were authorized in the amount of $25,000 pursuant to the provisions of the statute. These bonds were afterwards issued and sold, and the money had been placed in the paving fund before it was necessary to pay for the street intersections. Under this condition of the record it is not necessary to determine when the funds necessary to pay for these intersections might be said to be "available." Nor is it necessary to determine whether it was the duty of the city council to make such provisions that cash would actually be in the paving fund with which to pay for these intersections before the improvement was ordered.

In *Morse v. City of Omaha,* 67 Neb. 426, after disposing of the questions necessary to a determination of the case, the writer of the opinion proceeded to decide other questions, to a discussion of which it was said counsel had devoted much of their briefs and oral argument. In determining whether it was necessary that there should be a specific declaration in the ordinance that the improvement was necessary, the writer said:

"In the provision for a petition of the abutting owners, the legislature has spoken clearly and in mandatory tones. So also with the provision regarding the status of the intersection fund. There is no difficulty under the authorities and this statute to hold these provisions jurisdictional."

It appears from the further discussion at that point that this statement quoted was purely dictum. We do not feel bound by it. The provision that there must be "funds available" for the intersections when the improvement is ordered appears to be for the benefit and protection of the city itself and the general taxpayers therein. It may be that the council could be prevented from ordering such improvements as these without "funds available" for the street intersections. If it should be thought that ordering the improvement was not justifiable while the paving fund was in the condition shown by this record, which is by

no means clear, we have no hesitation in concluding that after the improvement had been made and the intersections paid for by the city, the property owner could not avoid the payment of the assessment against his property upon the ground that the council exceeded its authority in ordering the improvement without first providing the cash with which to pay for the intersections.

It follows that the assessment against the property of the plaintiff Pritchett was valid, and that the decree of the district court should also be modified so as to sustain that assessment.

With this exception the former opinions herein are adhered to.

JUDGMENTS MODIFIED.